WHITING, Respondent, vs. THE MISSISSIPPI VALLEY MANUFACTURERS' MUTUAL INSURANCE COMPANY, Appellant.

*April 10 — April 29, 1890.*

*Insurance against fire: Payment of premium: Waiver: Receipt: Cancellation of policy: Evidence.*

1. The agents and secretary of an insurance company sent to the plaintiff, whose policy was about to expire, blank applications for renewal, to be signed and returned by him, and stated that on receipt thereof the company would render a statement showing the amount of the dividend or unearned premium due the plaintiff on the old policy, and would credit the amount on the premium of the new policy. Plaintiff signed the application and returned it, with a premium note, and received a new policy, reciting that he had given such note and paid the cash premium. Plaintiff testified that he never received any statement, and did not know the state of the account between him and the company or the amount

of such unearned premium; that no claim had been made upon him for any premium upon the new policy, and that in his dealings with the defendant and its agents their mode of business had been to send him a statement of the amount of premium due and the amount of dividends to be deducted, and to draw upon him for the balance. *Held,* that the questions whether the premium on the new policy had been paid, or whether payment thereof had been waived, were properly left to the jury.

2. The recital in the new policy of the payment of the cash premium was *prima facie* evidence of that fact.

3. The renewal of the insurance having been procured by virtue of the letters soliciting the same and enclosing the applications therefor, the company cannot, in an action on the policy, deny the genuineness of such letters or that they were authorized.

4. In an action upon a policy of insurance a copy of a letter, in the letter-book of defendant's agent, purporting to have been written by a clerk not called as a witness, is not competent to prove a cancellation of the policy, in the absence of any evidence that such letter had been directed or mailed; especially when plaintiff denies having received any such letter.

5. The plaintiff, having actual knowledge of the cost of the building insured and what it was worth, was competent to testify regarding the loss, although he admitted that his estimates were based in part upon figures made by experts.

APPEAL from the Circuit Court for *Outagamie* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

December 28, 1887, the plaintiff held a policy of insurance, No. 1,017, issued to him by the defendant company on January 25, 1883, for $5,000, and which, by its terms, expired February 1, 1888, and for which he gave a premium note of $437.50, and paid a premium of $43.75, and which policy was countersigned by William E. Smith, manager. A day or so after December 28, 1887, the plaintiff received a letter, dated on that day at Chicago, addressed to him, purporting to be from William E. Smith Company, containing the following: " Inclosed please find application for renewal of Miss. Valley policy, No. 1,017. *Expiry* January 25, 1888. In form attached you will please fill in

amount as desired, and sign and return to this office at once, and policy will be forwarded first of the month. Your dividend for 1887 will be forwarded to you in cash, or deducted from first premium on new policy," — which letter is marked "Exhibit 8." A day or so after January 17, 1888, the plaintiff received a letter purporting to come from the secretary of the defendant company, dated on that day, and addressed to the plaintiff, containing the following: "Your policy, No. 1,017, $5,000, in the Miss. Valley, expires on the first of February next. We inclose herewith an application to renew the same at same rate and amount. On receipt of application duly signed, we will return to you the premium note given for No. 1,017, *and will render statement showing the amount of unearned premium due you thereon, and will credit the amount on the premium of the new policy.* Trusting for a prompt and favorable reply, we are, Yours truly, W. B. FERGUSON, Secretary, F.,"— which letter is marked *"Exhibit T."* Thereupon, and in answering said letters, the plaintiff signed such application; and on January 23, 1888, returned the same to William E. Smith Company, as agents of the defendant, with a premium note for $437.50, and upon the last day or days of January, 1888, received from the defendant a policy of insurance, No. 3,584, on the property therein described, dated February 1, 1888, signed by the president and secretary of said company and W. E. Smith Company, agents, reciting that the plaintiff had given a premium note for $437.50, payable as therein specified, and paid $87.50 premium; and in consideration thereof the said company insured the property described in such application to the amount of $5,000, from February 1, 1888, to February 1, 1893. The letter inclosing such policy is in evidence, marked "Exhibit U," and purports to have been sent by William E. Smith Company under date of February 1, 1888, and merely states, in effect, that inclosed would

be found the policy, "as per your esteemed order, . . . Mississippi Valley, $5,000," with thanks, etc. On the morning of August 28, 1888, the property insured was destroyed by fire.

December 22, 1888, the plaintiff commenced this action on said last-named policy, for damages caused by said fire, and alleging the usual facts in such cases, and that the plaintiff had fulfilled and performed all the conditions of said contract of insurance on his part, including the refusal of the defendant to pay the loss; that the fire did not result from any causes excepted by such policy; the making of due proofs of loss; the defendant's denial of liability; and that the defendant was indebted to the plaintiff in the amount of such insurance, with interest.

The defendant, answering, denied that the plaintiff had ever given or paid any consideration for said last-named policy, except said premium note, and especially denied that the plaintiff had paid, or that the defendant had received, said sum of $87.50, as premium for or on account of such policy, or any sum whatever; and alleged, in effect, that said former policy, No. 1,017, did not in fact expire until March 1, 1888, and that the policy No. 3,584 was issued by mistake, and supposing said former policy expired February 1, 1888, and that the premium note had been received under such mistake; that in and by said last-named policy the company were at liberty at any time to cancel and terminate its liability under the same, by giving notice of such intention to the plaintiff and returning to him his said note and such portion of the premium paid thereon, if any, as was then unearned; that February 3, 1888, the defendant directed the cancellation of said policy; that February 5, 1888, notice of such intention to cancel said policy, and that such insurance had been and was terminated, was duly given to the plaintiff, and said premium note duly returned to him; and said policy was, on said last-mentioned day, duly canceled, and thereupon ceased and determined.

At the close of the trial of the issue thus formed the jury returned a verdict in favor of the plaintiff and against the defendant for the sum of $5,291.66. From the judgment entered upon that verdict the defendant appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles*, and oral argument by *Charles Quarles*.

*Gabe Bouck*, for the respondent.

CASSODAY, J. The plaintiff testified, in effect, that after having received the letters dated December 28, 1887, and January 17, 1888, set forth in the foregoing statement, and the applications therein mentioned, and on January 23, 1888, in answer to said letters he sent forward to William E. Smith Company the application for the renewal of his policy, and that on or about January 28, 1888, he received from them the policy in suit, inclosed in the letter dated February 1, 1888, mentioned in said statement. The answer concedes that in January, 1888, the plaintiff held a policy of insurance issued by the defendant upon the property in question, which was about to expire. It is therein alleged, however, that that policy by its terms expired March 1, 1888, and that the policy in suit was issued February 1, 1888, under the mistaken apprehension that such former policy expired at that time. But it is conclusively proved by such former policy itself in evidence that by its terms it expired February 1, 1888. The answer concedes that on or about February 1, 1888, the plaintiff delivered to the defendant's agent the premium note mentioned in the complaint, and that the defendant, by its agents, thereupon issued to the plaintiff the policy in suit, containing the recitals mentioned in said statement. With these concessions it is useless for the defendant to deny the authenticity of the letters dated December 28, 1887, and January 17, 1888, soliciting the plaintiff to renew his policy, and containing the application which was signed by the plaint-

iff and sent forward to the defendant's agents, with such premium note upon which such policy was so issued.   The contract of insurance having been procured by virtue of the correspondence, it is too late to disclaim the genuineness of the letters, or to insist that they were unauthorized by the defendant.

The answer denies any and all liability upon the policy. It also denies that the plaintiff ever paid, or the defendant ever received, the $87.50 as premium, recited in the policy as having been paid, or any sum whatever, or any consideration for the policy, except the premium note mentioned; and it is claimed that the policy was void by reason of such failure to pay such cash premium.   In the letter received by the plaintiff from the defendant, dated January 17, 1888, set forth in the foregoing statement, he was informed, in effect, that upon the receipt of the application duly signed by him the defendant would return to him the premium note given for the old policy, and would render a statement showing the amount of unearned premium due to him thereon, and would credit the amount thereof on the premium of the new policy.   That letter was an express acknowledgment on the part of the defendant that it had, or would have at the expiration of the old policy, a certain amount of money belonging to the plaintiff, without stating what the amount was.   It also contained a promise on the part of the defendant that it would render to the plaintiff a statement showing such amount, and would credit the same upon the new policy.   Presumably the defendant did so credit such amount at the time of issuing the new policy. The plaintiff testified that no such statement was ever received by him from the defendant, or William E. Smith Company, or anybody else; that prior to the fire he did not know anything about how the account stood between him and the company, nor the amount of such unearned premium; that neither the defendant nor William E. Smith

Company, nor any other person or persons, ever made any claim on him for any unpaid premiums or payment on that note; that in his dealings with the defendant and its agents their mode of doing business had been to send him a statement of the amount of premiums due and the amount of the unearned dividend, and deduct the latter from the former, and draw on him for the balance; but that with respect to this policy they had not done so. The plaintiff could not know the amount of such credit without being informed by the defendant as promised, and consequently he could not know whether any, and if any how much, of such cash premium remained for him to pay, without such promised information. If there was any balance of cash premium to be paid by the plaintiff, the letter was manifestly a waiver of such payment until such information should be given. Such being the evidence, there was no error in charging the jury, in effect, that the recital in the policy of the payment of the cash premium was *prima facie* evidence of the fact recited, subject to contradiction by competent evidence. It is true one witness in behalf of the defendant testified that some time after the fire the plaintiff had admitted to him that he never had paid the cash premium; but this was manifestly a mere inference from the above facts stated by the plaintiff to the witness.

From the evidence in the record we cannot say it was error to submit to the jury the question whether the dividends on the old policy equaled or exceeded the cash premium named in the new policy; or the question whether the plaintiff had been misled by such letters and the policy, and thereby induced to believe that the cash premium on the new policy had been paid by the application of the dividends due him on the old policy; or the question whether the plaintiff had good reason to believe from such former dealings and letters that the defendant would send him a statement of the amount due him for such dividends on the

old policy, and draw on him for any balance; and, if such findings were in favor of the plaintiff upon a fair preponderance of the evidence, then that they were authorized to find that the defendant had waived the payment of the cash part of the premium named in the policy; but that if they found from a fair preponderance of the evidence that such cash premium on the new policy had not been paid nor waived by the defendant in the manner indicated, then their verdict should be in favor of the defendant. Such waiver of payment has frequently been sanctioned by this court. *Alexander v. Continental Ins. Co.* 67 Wis. 422; *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 229; *Campbell v. Am. F. Ins. Co.* 73 Wis. 100.

The answer alleges that the defendant directed the cancellation of the policy a few days after it was issued, and gave notice of such intention to the plaintiff, February 5, 1888. The plaintiff denies any notice or information, directly or indirectly, from the company, prior to the fire, of any cancellation of the policy or any claim or desire to cancel the same; and there is no evidence in the record, and no competent evidence offered, proving or tending to prove such cancellation or notice. Certainly the mere impression in a letter book, kept in the office of the defendant's agents, purporting to have been written by one of their clerks not testifying, and without any evidence as to such letter ever having been mailed or directed, was not competent to prove such cancellation, especially as against the plaintiff's denial.

The plaintiff, having actual knowledge of the cost of the building and what it was worth, was competent to testify regarding the loss, notwithstanding his admission that his estimates were based in part upon figures made by experts, and hence there was no error in refusing to strike it out.

The court properly excluded a question put to the plaint-

iff on his cross-examination as to whether the appraiser chosen by him did not agree to a certain statement of loss. Such testimony was in no sense competent. For the same reason, a similar question put to the witness Redfield was properly excluded. The permitting of leading questions is very much in the discretion of the trial court, and we cannot reverse this case for the exercise of any such discretion. The exclusion of the copy of a letter said to have been written by the plaintiff, correcting certain items in the appraisal, seems to be of little consequence, since the defendant's adjuster conceded that the matter was finally settled by adding $100 to the award of the appraisers. Other exceptions in the record are not such as to call for special consideration.

*By the Court.*— The judgment of the circuit court is affirmed.