Jackson vs. The Northwestern Mutual Relief Ass'n.

JACKSON, Appellant, vs. THE NORTHWESTERN MUTUAL RELIEF ASSOCIATION, Respondent.

*December 18, 1890 — January 13, 1891.*

*Life insurance: Mutual benefit associations: Assessments: Forfeiture for nonpayment: Waiver: Reinstatement: Court and jury.*

1. Upon the evidence in this case (stated in the opinion) it is *held* that the question whether notice of a certain assessment had been sent to the assured by the defendant company should have been submitted to the jury.
2. The by-laws provided that within six months after a forfeiture the defaulting member might be reinstated by paying all arrearages and furnishing a satisfactory certificate of health. After the assessment for nonpayment of which a forfeiture was claimed, notices of subsequent assessments were sent to the assured, together with reinstatement notices which stated that previous assessments were then unpaid, probably through some oversight, and that it was presumed that the assured would gladly sign a reinstatement contract, a blank for which was inclosed. *Held*, that the question whether there had been a waiver of the forfeiture should have been submitted to the jury.
3. The last of these reinstatement notices was sent to the assured on January 26th. It requested that the matter be given prompt attention. On February 12th the assured mailed to the company the amount of arrearages, with an application for reinstatement signed

as directed, and a certificate showing that her health was as good as when she joined the company. In going to or returning from the post-office she contracted a cold, and died suddenly on the next day, before the package containing the money and papers had reached the company. *Held:*

(1) Her rights as to reinstatement became fixed at the time of mailing the package, and her subsequent death was immaterial.

(2) The question whether there had been an unreasonable delay after receiving the notice before sending the money and reinstatement papers, was one for the jury.

4. It was error to instruct the jury that the company had the right to reject the application for reinstatement upon the ground that it "did not consider" the certificate of health sufficient. The rights of the assured depended upon its sufficiency in fact.

APPEAL from the Circuit Court for *Iowa* County.

Action upon a policy of life insurance or certificate of membership issued by the defendant company to Cordelia Jackson, the deceased wife of the plaintiff, who is the beneficiary named therein. An order sustaining a demurrer to the complaint was reversed by this court. 73 Wis. 507. The facts appearing upon the trial are sufficiently stated in the following opinion. There was a verdict for the defendant, and from the judgment thereon the plaintiff appeals.

For the appellant there was a brief by *Spensley & McIlhon* and *H. W. Chynoweth,* and oral argument by *Mr. Chynoweth* and *Mr. Calvert Spensley.* To the point that the defendant waived the forfeiture if any accrued, they cited *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224; *Erdmann v. Mut. Ins. Co.* 44 id. 376; Bliss, Life Ins. 432, sec. 270; *Frost v. Saratoga Mut. Ins. Co.* 5 Denio, 154; *Cumberland Valley M. P. Co. v. Mitchell,* 48 Pa. St. 374; *Viall v. Genesee Mut. Ins. Co.* 19 Barb. 440; *Insurance Co. v. Eggleston,* 96 U. S. 572; *Appleton v. Phenix M. L. Ins. Co.* 59 N. H. 541, 47 Am. Rep. 220; May, Ins. secs. 360, 361; *Nat. Mut. Ben. Asso. v. Jones,* 84 Ky. 110; *Rice v. N. E. Mut. Aid Soc.* 145 Mass. 248.

*Burr W. Jones,* for the respondent.

ORTON, J.   On the 23d day of March, 1886, Cordelia Jackson became a member of the *Northwestern Mutual Relief Association,* and received therefrom a certificate thereof, or a policy of insurance, which stipulated to pay her husband, *William T. Jackson,* the appellant, on her death, eighty per cent. of an assessment levied and collected for such purpose, not exceeding $4,000.   Cordelia Jackson died on the 13th day of February, 1888.   By the by-laws of this association, whenever any members die the surviving members are assessed to pay the beneficiaries named in the policies of such deceased members.   Such assessments are required to be ordered by the executive committee, and the secretary was required to prepare notices of such assessments, and mail and address the same to the surviving members at their places of residence by their names as entered on the books of the company.   On the failure to pay such assessments within thirty days after such notice, the policies of such defaulting members become forfeited.   Within six months after such forfeitures, such defaulting members may be reinstated by paying all arrearages and furnishing a satisfactory certificate of health if required by the executive committee.   It was the custom for the secretary to act upon and decide cases of reinstatement without consulting the executive committee; and a certificate of health made by any member on application for reinstatement was generally acceptable.

The *gravamen* of the answer in this case is that an assessment of the insured, Cordelia Jackson, numbered 14, of $2.70, was ordered on the 26th day of February, 1887, by the executive committee, on account of the death of three certain members of the association, and that on the 4th day of March following a notice of said assessment, bearing date the 7th day of March, 1887, was duly made out, placed in an envelope, securely sealed, and posted, addressed to Cordelia Jackson, Mineral Point, Wis., care of the plaintiff, and

that she failed to pay such assessment, and that thereby all of her rights of membership in the association became wholly forfeited.   It is further alleged that afterwards, at different times, she was duly notified of subsequent assessments, Nos. 15, 16, 17, and 18, and that she failed to pay the same, and failed to pay the arrearages for her reinstatement, of which she also had notice.

As I understand the evidence, all the subsequent notices of assessment were like that of No. 14, and in addition thereto a notice to pay all past assessments also, as the condition of reinstatement.   The notice of assessment No. 14 contained the names of three deceased members on account of whose death the assessment was made.   These names were not repeated in any subsequent notice, and this assessment was only referred to generally as being in arrears and to be paid also.   It was therefore a very important question whether the notice and other papers in respect to assessment No. 14 were sent to the said Cordelia Jackson.   It may be divided into two questions: (1) Was the envelope containing them properly directed to Mrs. Jackson according to the rules of the company?  (2) Was the package deposited in the mail?

It is not claimed by the company that there had been any other forfeiture of the rights of the insured in the policy, except that which followed the failure to pay the assessment No. 14.   After that, the said Cordelia Jackson, it is claimed, was treated as having no rights whatever as a member of the company, and as having the privilege only to make application for reinstatement as a *lapsed* member. The learned counsel of the respondent contends that, although several other assessments were afterwards made upon her, she was never afterwards assessed as a member, and that such subsequent assessments had to be paid by her as one of the conditions of her reinstatement, and insists that nothing was ever done by the company afterwards to

waive the forfeiture consequent upon the failure to pay assessment No. 14. The company must not assume opposite, contradictory, or inconsistent positions. Mrs. Jackson had forfeited all of her rights in the company on failure to pay that assessment, or she had not and was still a member afterwards and when the subsequent notices in respect to reinstatement and the payment of subsequent assessments were served. The court very properly instructed the jury that they must find that assessment No. 14 was duly made, and that Mrs. Jackson had notice of it. But in another part of the charge of the court the jury were instructed as follows: "I think the testimony all shows that such assessment [No. 14] was duly and properly made, and that Mrs. Jackson had notice of it before her death, and before the time when it was claimed on the part of the plaintiff she undertook to pay it and other assessments which would entitle her to make application for reinstatement. So that if the case had rested here the court would have, if requested to do so, directed a verdict for the defendant." The fact alluded to in this instruction was that she undertook to pay, not only assessment No. 14, but all subsequent assessments, long afterwards, in February, 1888. We shall hereafter see that she received the necessary papers from the company in relation to all of such assessments, containing the amount to be paid, with a view of her reinstatement, January 26, 1888, and that she sent the money to the company on the 12th day of February next thereafter. Aside from these facts, the court virtually instructs the jury that the plaintiff ought not to recover. The material facts on which the forfeiture was predicated,— that assessment No. 14 was duly made, and that Mrs. Jackson had due and proper notice of it, and that she failed to pay within thirty days thereafter,— and which the court had told the jury they must find in order to find the forfeiture, are thus taken away from them, and they are instructed that the testimony all shows that said assessment

was duly and properly made, and that Mrs. Jackson had notice of it before her death; that is, that she had notice of it long after. It is claimed Mrs. Jackson had ceased to be a member by failure to pay assessment No. 14 within thirty days after due and proper notice of it. All the subsequent notices and papers related wholly to her reinstatement after such forfeiture, and they could not, and were not intended to, work a forfeiture. There could be but one forfeiture without reinstatement. This instruction not only takes the whole case from the jury, but forces the company into a very inconsistent position. The company, in its answer and on the argument, claimed that the forfeiture depended upon the failure to pay within thirty days after the notice of assessment No. 14, and it is not claimed that there was any other forfeiture. After this instruction, it was not necessary for the jury to find, and they probably did not find, that the notice of assessment No. 14 had been sent to Mrs. Jackson, as alleged. This instruction was a very material error.

It is contended, however, that there was sufficient evidence that the notice of said assessment was inclosed in an envelope directed or addressed to Mrs. Jackson, care of the plaintiff, at Mineral Point, and that the same was deposited in the post-office at Madison. This was the principal subject of contention; and proof of such facts, upon which the forfeiture was predicated, seemed to be essential to the defense. It is elementary that forfeitures are not favored, and that the facts upon which it depends must be proved by the clearest and most satisfactory evidence. The testimony that this package was never received by Mrs. Jackson or the plaintiff seems to have been quite positive. The fact that it was not received is strong evidence that it was not sent. The by-laws of the company required that such notices should be sent to the address of the insured as found upon the books; and the address in this case was Cordelia Jackson, care of *William T. Jackson.* The secretary of

the company testified that it was his habit to send notices according to the address on the books, but that he had sometimes sent them addressed to the person in whose care they were required to be sent, if such person was the husband of the insured, to save time, and it appears that he had done so in some cases, and that he had sent notices relating to this insurance directly to the husband. The secretary was unable to testify how this notice was actually addressed, whether to Cordelia Jackson alone, to her in care of her husband, or to him alone. He had no recollection on the subject. There was no proof whatever that it was addressed to Cordelia Jackson, the only proper person to whom it could have been lawfully sent. The entire absence of testimony that the notice was directed to Mrs. Jackson is as fatal to the notice as if it had not been sent at all.

The testimony as to the depositing of the notice in the post-office is presumptive, rather than positive. The secretary, by the aid of another, made out notices of the assessment, as he testified, to all members in good standing, and placed them in a cupboard. He afterwards compared them with the list of such members. They were then placed in a trunk or box, and an agent of the company went with it as it was conveyed to the post-office, and saw them delivered, and he then signed the list on the books, to indicate their delivery at the post-office. No person was able to testify that this notice was one of those delivered, or that Cordelia Jackson was one of such members in good standing, from actual view or inspection. It may perhaps be presumed that she was one of such members; but against such a presumption is the fact that she never received such notice. It was in evidence, also, that in relation to assessment No. 9 no notice thereof was sent to Cordelia Jackson until long after assessment No. 14, and that in relation to assessment No. 10 no notice was ever sent to her. It fol-

Jackson vs. The Northwestern Mutual Relief Ass'n.

lows, therefore, that, in making the list of members in good standing, it is at least possible that some of them may be omitted, by mistake or oversight, and that Cordelia Jackson, in this instance, might possibly have been omitted. Do not these facts overcome the presumption that she was. one of the members in good standing to whom a notice was made out and sent? It is sufficient that it renders such fact uncertain, and the testimony unreliable and unsatisfactory. Both of these questions were taken from the jury. It is sufficient that the testimony was not so conclusive upon these questions as to warrant the court in instructing the jury that notice of said assessment had been given to Mrs. Jackson. In such a state of the evidence, the question of the notice was a very proper one to be submitted to the jury. *Supreme Lodge v. Johnson*, 78 Ind. 110; *Covenant B. Asso. v. Spies*, 114 Ill. 467; *Castner v. Farmers' M. F. Ins. Co.* 50 Mich. 273; *Wachtel v. Noah W. & O. B. Society*, 84 N. Y. 28; *Payn v. Mutual R. Society*, 17 Abb. N. C. 53. The taking away from the jury these questions of the notice was also a material error.

As said before, the company on the 26th day of January, 1888, sent its last notice to Mrs. Jackson for her reinstatement as a member on payment of all past assessments, including assessment No. 18, with an application for her reinstatement for her to sign. The sums of such assessments made the sum of $11.35. On the 12th day of February next following, she sent by mail to the company said amount, together with a certificate of her health, which showed that her health was as good as when she became a member of the company, and an application for her reinstatement, signed as directed. This notice of reinstatement recited that there appears to be due back assessments Nos. 14, 15, 16, 17, and 18, and .suggested that it might be an oversight or neglect, and that it is presumed that she would gladly sign a reinstatement contract. It seems that Mrs.

Jackson contracted a cold on going to or returning from the post-office where she had deposited the package containing the money and papers so sent to the company, and died very suddenly the next day. The evidence tends to show that her health was good, so far as appearances indicated, when she deposited the package in the post-office at Mineral Point, properly directed to the company at Madison, and so the jury would have been warranted in finding. It was in evidence that the secretary of the company had sent to her such a reinstatement notice at each time there had been an assessment against her after the pretended forfeiture of her rights by failure to pay assessment No. 14, and that the company had dealt very liberally, if not loosely, with Mrs. Jackson, and had not taken advantage of her various delays and neglects in paying assessments, and had continued to send her the notices and papers for her reinstatement.

It is contended by the learned counsel of the appellant that this custom or habit of continuing to make assessments against Mrs. Jackson, and sending her notices of reinstatement upon payment of such assessments, implied that she had not forfeited her rights as a member of the company, or, if she had, that the company had waived such forfeiture and would not insist upon it. It is certainly not so clear that the company had not waived such pretended forfeiture by this course of dealings with her as to justify the court in taking the question from the jury, and instructing them that "sending to Mrs. Jackson the several reinstatement notices mentioned in the testimony was not necessarily a waiver of the forfeiture of her rights of membership." This was also a material error.

In the very recent case of *Kenyon v. Knights T. & M. M. A. Asso.* 122 N. Y. 247, the certificate required the money for assessments to be paid at the office in cash, sight drafts, or money orders. Failure to pay in ten days after notice worked a forfeiture of membership. The member

had paid fifteen assessments by mailing his check to the company, without objection. In the last instance he mailed his check in time, but it did not reach the office within the ten days. The court held that the jury were warranted in finding that this method had been acquiesced in by the company, and that the certificate was not forfeited. In *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224, it was held that the company had waived its right to declare a forfeiture for failure to pay the last assessments until after the member's death, by receiving assessments, in a great number of instances, after the time limited by the rules of the company, and by continuing to make assessments against the member after repeated defaults. Mr. Justice TAYLOR says, in the opinion: "Every time the company makes an assessment against the assured after he has failed to pay a previous assessment within the time prescribed by the rules, it waives the forfeiture of the policy for such failure to pay, and admits him to be a member of the company notwithstanding such failure." This case is strongly in point. See, also, *Whiting v. Miss. V. M. M. Ins. Co.* 76 Wis. 592; *Erdmann v. Mutual Ins. Co.* 44 Wis. 376; *Woodruff v. Depere*, 60 Wis. 128; *Alexander v. Continental Ins. Co.* 67 Wis. 422, and cases cited in appellant's brief.

It seems that the last package containing the money for all past dues was received by the company on the 14th day of February next after it was mailed. It was laid aside on account of the sickness of the secretary. In the mean time having heard of the death of Mrs. Jackson, he returned the money to her address on the 23d or 24th of the same month. The court instructed the jury on that subject as follows: "That Mrs. Jackson was dead before the reinstatement and money reached Madison, if you find such to be the fact, was good cause for disapproval of her application." This instruction was also erroneous. If Mrs. Jackson mailed the papers and money, together with a certificate of health, in

proper time, according to the by-laws or the custom of the
company, her rights became fixed by it, and her subsequent
death before the package reached the company could not
change them.   She had done all that the company had re-
quired of her by the notice of reinstatement. She was then
reinstated, if she would have been had she not died until
after the package had reached the company.   Her death
made no difference with her reinstatement.   In *Connelly v.
Masonic M. B. Asso.* 58 Conn. 552, a suspended member
for nonpayment of dues was reinstated by the proper officer
after his death.   It was held that his death was immaterial.
See, also, *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224.
The only question material to the rights of the assured in
such a case is whether the package was sent in proper time.
If this question depended strictly upon the by-laws of the
company, the court would have been justified in instructing
the jury that the delay in sending the money and reinstate-
ment papers, from the 27th day of January, when the notice
of the company was probably received, until the 13th day
of February, was fatal to her rights of reinstatement.   But
in view of the past dealings of the company with the as-
sured, as above considered, the question is one of reasonable
or unreasonable delay, and that is a question of fact for the
jury.   The court therefore erred in instructing the jury as
follows: "Whatever rights were conceded Mrs. Jackson
by sending these reinstatement notices to her, she did not
avail herself of them by prompt action; and a notice that
she should respond promptly, or give the matter immediate
attention, cannot be held to justify a delay of several weeks,
if you find there was such delay, especially if after such de-
lay she had reached a condition of bad health." The court
not only took this question from the jury, but stated a fact
which was not warranted by the evidence, namely, that she
had reached a condition of bad health when she responded
to the notice.   The evidence tended to show that Mrs.

Jackson signed the papers, and put them, together with the money and certificate of health, in an envelope directed to the company, on the 11th, mailed the package on the 12th, and died on the 13th day of February, and that she was in good health when she mailed the package, and the certificate of health would seem to have been reasonably sufficient.

On the subject of the certificate, the court erred also, by instructing the jury that the company had the right to reject her application for reinstatement " upon the ground that it did not consider her statements in regard to health sufficient." If Mrs. Jackson secured any right whatever by so responding to this last reinstatement notice of the company, then the certificate of health she sent with the other papers and the money did not depend upon how the company considered it, but upon its sufficiency in fact. This erroneous instruction was material, because the evidence tended to show that the application was rejected on the ground of the insufficiency of the certificate of health, and not on account of her death.

Other errors are assigned in the brief of the learned counsel of the appellant, which may not be repeated on a subsequent trial, and this opinion is already of sufficient length. The facts of the case are stated in connection with the points considered, which has served to lengthen the opinion.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.