EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. NIXON.

(Circuit Court of Appeals, Ninth Circuit.  July 1, 1897.)

No. 340.

1. LIFE INSURANCE—PLACE OF CONTRACT.

Where an application for life insurance was made in the territory of Washington, and the advance premium paid there to the company's agent, to be forwarded to the company, under an agreement that the insurance should not take effect unless the premium was accepted and the risk .approved by the company in New York, and, by the terms of the policy issued, all premiums and the policy itself were payable in New York, and proof of death was to be there made, the policy is a New York contract, and the rights of the parties thereunder are governed by the statutes of that state, there being no statute in the territory or state of Washington affecting the right of the parties to so contract.

2. SAME—FORFEITURE FOR NONPAYMENT OF PREMIUM—STATUTE.

The statute of New York providing that no life insurance company doing business in that state shall have power to declare a policy forfeited for nonpayment of premiums, anything to the contrary in the policy notwithstanding, until 30 days after it shall have mailed a notice to the assured or to his assignee, as therein prescribed, and stating that the policy will be forfeited unless payment is made within 30 days, unless a similar notice shall have been mailed not less than 30 nor more than 60 days previous to the maturity of the premium, which shall state the date of such maturity, applies to and governs a policy issued and to be performed in New York, though the assured resides in another state.

3. SAME—ACTION ON POLICY—EVIDENCE.

Under the provision of the New York statute making the affidavit of any officer, clerk, or agent of a life insurance company, that the notice required by the statute to be given to a policy holder before a forfeiture of the policy for nonpayment of premiums can be declared has been duly addressed and mailed, presumptive evidence of such fact, evidence to rebut such presumption may be given by the adverse party, and may consist in part of evidence of the nonreceipt of such notice by the assured.

4. SAME—WAIVER OF STATUTORY REQUIREMENT.

The statute of New York declaring that no life insurance company shall have power to declare a policy forfeited for nonpayment of premiums until 30 days after the notice therein prescribed shall have been given is mandatory, and its requirements cannot be waived by the parties.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

Thomas R. Shepard, for plaintiff in error.

Stanton Warburton, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge.  This action was brought by Cora E. Nixon, a citizen of the state of Washington, and widow of Thomas L. Nixon, upon a policy issued by the Equitable Life Assurance Society of the United States, a corporation of the state of New York, and doing business in the then territory of Washington, upon the life of Thomas L. Nixon; the complainant being the beneficiary of the policy.  The application for the policy was made July 14, 1888, at Tacoma, in the then territory of Washington.  Among the questions and answers contained in the application were the following:

"(12) What cash premium has been paid, to make the assurance under this application binding from this date, provided the risk is assumed by the society? A. ¼ annual premium of $80.00 has been paid, upon condition that, if the risk is not assumed by the society, this sum is to be returned, in accordance with the provisions of the society's official binding receipt No. 20,860, given as voucher for said payment. It is hereby agreed that all the foregoing statements and answers, as well as those made or to be made to the society's medical examiner, are warranted to be true, and are offered to the society as a consideration of the contract, which shall not take effect until the first premium shall have been paid during the life and good health of the person herein proposed for assurance."

The application papers, including the medical examiner's report, upon being completed and signed, were delivered by the applicant to one Delprat, at Tacoma, and by him delivered to one May, a subagent at Portland, Or., under North & Snow, the managers and general agents at San Francisco, Cal., of the defendant corporation. At the time of so delivering the application, the applicant, Thomas L. Nixon, paid to Delprat $80, as the first quarterly premium on the desired policy, receiving therefor from Delprat the defendant corporation's "binding receipt," conditioned that, if the risk proposed should not be assumed by the society, the money should be refunded; and the money so paid was forwarded by Delprat, through May, to North & Snow, who remitted it to the home office of the society, in the city of New York. The application being there accepted, the policy in suit was executed on the part of the defendant corporation in the city of New York on or about August 1, 1888, and was, through its agents, sent to the assured, at Tacoma, Wash. By the terms of the policy all premiums were due and payable in the city of New York; the proofs of death were to be delivered to the company at its home office, in that city; and the policy, when it matured, was payable to the beneficiary in the state of New York. It was "issued and accepted upon the condition that the provisions and requirements printed or written by the society upon the back of this policy are accepted by the assured as part of this contract, as fully as if they were recited at length over the signatures hereto affixed." Among the provisions and requirements thus referred to and made a part of the policy were the following:

"(4) All premiums are due in the city of New York, at the date named in the policy; but, at the pleasure of the society, suitable persons may be authorized to receive such payments at other places, but only on the production of the society's receipt therefor, signed by the president, first, second, or third vice president, actuary, assistant actuary, secretary, assistant secretary, second assistant secretary, comptroller, cashier, or registrar, and countersigned by the person to whom the payment is made. No payment made to any person except in exchange for such receipt will be recognized by the society. All premiums are considered payable annually in advance. When the premium is made in semiannual or quarterly installments, that part of the year's premium, if any, which remains unpaid at the maturity of this contract, shall be regarded as an indebtedness to the society on account of this contract, and shall be deducted from the amount of the claim; and, if any premium or installment of a premium on this policy shall not be paid when due, this policy shall be void. Nevertheless, nothing herein shall be construed to deprive the holder of this policy of the privilege to demand and receive paid-up insurance in accordance with the agreement contained in this policy. (5) The contract between the parties hereto is completely set forth in this policy and the application therefor, taken together; and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing signed by the president, first, second, or third vice president, actuary, assistant actuary, secretary, assistant secretary, second

assistant secretary, comptroller, cashier, or registrar of the society, whose authority for this purpose will not be delegated."

The assured paid all premiums that accrued prior to July 14, 1890. The quarterly premium that accrued on that day was not paid, and it is insisted by the defendant corporation that by that failure the policy was rendered void. That depends upon whether the contract is to be regarded as a Washington or a New York contract; for there is no statute of Washington affecting that provision of the policy which declares that, "if any premium or installment of a premium on this policy shall not be paid when due, this policy shall be void." In the state of New York there is such a statute, and hence the principal question in the case is whether the policy in suit was a New York contract, and to be ruled in accordance with the statute of that state, or to be governed by the principles of the common law, which are in force in Washington in respect to such contracts of insurance. We think it clear that the policy in question was a New York contract. It was applied for in the territory of Washington, through one of the defendant corporation's agents, to whom the defendant corporation had intrusted its "binding receipt" for the first premium upon the policy, and to whom the applicant paid the first premium, in consideration of which the soliciting agent delivered him the company's receipt. The only condition attached to the payment was that, in the event the application should be rejected by the defendant corporation, the money should be refunded to the applicant; and by the express terms of the application, which was made a part of the policy, the payment of the cash premium at the time of the making of the application made the assurance under the application binding from the time of payment, provided the risk should be assumed by the society. When the application and the applicant's money were accepted by the society, the contract between the parties became complete. That was done in the state of New York. Not only so, but, as has been seen, all of the conditions of the policy were to be performed in the state of New York; the premiums were to be paid in that state; proof of loss, if any. was to be there made; and the payment agreed to be made by the defendant corporation in the event of the death of the assured was to be made in the state of New York. It would seem to be very clear, therefore, that the rights and obligations of the respective parties are to be measured and controlled by the laws of that state, subject, perhaps, to any additional limitations or conditions imposed by the statutes of the state (then territory) into which the defendant corporation went to solicit the business in question; for it may be true that every foreign corporation that enters a state other than that of its creation, and there transacts business, does so in subordination to the statutes of the state permitting its entry therein, and that no business transacted by virtue of the privilege thus conferred can, by any sort of contract, be removed from the operation of the statutes of the state permitting the business to be transacted. But in the present case, as has been said, there is no Washington statute affecting that portion of the policy here in question.

The conclusion reached by the court below—which we think cor-

rect—that the contract in question was a New York contract is well supported by authority. Wayman v. Southard, 10 Wheat. 48; Pritchard v. Norton, 106 U. S. 124, 136, 141, 1 Sup. Ct. 102; Bank v. Hume, 128 U. S. 195, 206, 9 Sup. Ct. 41; Coghlan v. Railroad Co., 142 U. S. 101, 109, 12 Sup. Ct. 150; Hall v. Cordell, 142 U. S. 116, 120, 12 Sup. Ct. 154. There is nothing to the contrary in the case of Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, so much relied on by the plaintiff in error. In that case it appeared that the first premium was not paid by the assured until the delivery of the policy to him in the state of Missouri, and no other acceptance of his application for insurance by the company was made to appear. The court said:

"The application declares that the contract 'shall not take effect until the first premium shall have been actually paid during the life of the person herein proposed for assurance.' The petition alleges that that premium and two annual premiums were paid in Missouri. The answer expressly admits the payment of the three premiums, and, by not controverting that they were paid in Missouri, admits that fact also, if material. Rev. St. Mo. 1879, § 3545. The petition further alleges that the policy was delivered in Missouri, and the answer admits that the policy was, 'at the request of the said Wall, transmitted to the state of Missouri, and was delivered to said Wall in said state.' If this form of admission does not imply that the policy was, at the request of Wall, transmitted to another person, perhaps the company's agent, in Missouri, and by him there delivered to Wall, it is quite consistent with such a state of facts; and there is no evidence whatever, or even averment, that the policy was transmitted by mail directly to Wall, or that the company signified to Wall its acceptance of his application in any other way than by the delivery of the policy to him in Missouri. Upon this record, the conclusion is inevitable that the policy never became a completed contract, binding either party to it, until the delivery of the policy and the payment of the first premium in Missouri, and, consequently, that the policy is a Missouri contract, and governed by the laws of Missouri."

The contract involved in the present case was made when the application and the applicant's money were accepted by the insurance company, not before nor after. It then became a completed contract, binding both parties to it. The place of its making, as well as the place of its performance, being the state of New York, there is no room for doubt that it is governed by the laws of that state. The statute of New York declares:

"No life insurance company doing business in the state of New York shall have power to declare forfeited or lapsed any policy hereafter issued or renewed by reason of non-payment of any annual premium or interest, or any part thereof, except as hereinafter provided. When any premium or interest due upon such policy shall remain unpaid, when due, a written or printed notice stating the amount of such premium or interest due on such policy, the place where said premium or interest should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is insured, or the assignees of the policy, if notice of the assignment has been given to the company, at his or her last known post office address, postage paid by the company, or by an agent of such company, or person appointed by it to collect such premium. Such notice shall further state that unless the said premium or interest then due shall be paid to the company, or to a duly appointed agent or other person authorized to collect such premium, within thirty days after the mailing of such notice, the said policy and all payments thereon will become forfeited and void. In case the payment demanded by such notice shall be made within the thirty days limited therefor, the same shall be taken to be in full compliance with the requirements of the policy in respect to the payment of said premium or interest, anything contained to the contrary notwithstanding; but

no such policy shall in any case be forfeited or lapsed until the expiration of thirty days after the mailing of such notice, provided, however, that a notice stating when the premium will fall due, and if not paid, the policy and all payments thereon will become forfeited, at least thirty and not more than sixty days prior to the time when the premium is payable, shall have the same effect as the notice hereinbefore provided for." Sess. Laws 1876, c. 341, § 1, as amended by Laws 1877, c. 321.

### Section 2 of the act is as follows:

"The affidavit of any officer, clerk, or agent of the company that the notice to the assured provided for in section one has been duly addressed and mailed by the company issuing such policy to the assured shall be presumptive evidence of such notice having been duly given."

It has been several times decided by the court of appeals of New York that the provisions of this statute respecting forfeitures should be strictly interpreted in favor of the assured, and that the defense of a forfeiture through nonpayment of premium is not available to an insurance company if there has been any departure on its part from the provisions of the statute in regard to notice. De Frece v. Insurance Co., 136 N. Y. 144, 32 N. E. 556; Baxter v. Insurance Co., 119 N. Y. 450, 23 N. E. 1048; McDougall v. Society, 135 N. Y. 551, 32 N. E. 251; Phelan v. Insurance Co., 113 N. Y. 147, 20 N. E. 827; Carter v. Insurance Co., 110 N. Y. 15, 17 N. E. 396.

It is contended on the part of the plaintiff in error that its proof to the effect that the notice required by the statute of the premium falling due July 14, 1890, was properly given through the mail to the assured was conclusive, and that the court below erred in permitting the defendant in error to give any evidence to the effect that such notice was never received by the assured. In Association v. Hamlin, 139 U. S. 298, 11 Sup. Ct. 614, by the terms of the contract the certificate of insurance issued to Hamlin became null and void if he failed to pay, when due, at the office of the defendant association in the city of New York, or to its agents furnished with the proper receipt, any assessment upon him. An assessment became due and payable "within thirty days from the date of each notice"; that is, from the date of the notice of such assessment. Upon the subject of notices by the association to members the certificate provided:

"A notice addressed to a member at his post-office address, as appearing upon the books of the association, according to its usual course of business, shall be deemed a sufficient notice; and proof of mailing same according to the usual course of business of said association shall constitute and be deemed and held sufficient proof of compliance herewith on the part of said association."

The same provision as to notice was in the constitution of the association. The controlling question in the case was whether the insurance company gave notice to the assured of a certain assessment falling due June 2, 1884. The trial court instructed the jury that it was not incumbent upon the defendant to prove anything more than that it mailed a notice of the assessment to the insured according to his address and its usual course of business, and that, that fact being proved, it was entitled to a verdict, whether the insured received the notice or not; thus giving to the insurance company the most favorable construction of the contract to which it was

entitled, under any view. It was contended by the company that the proof of such mailing was so overwhelming that the court erred in refusing to instruct the jury to find a verdict in its favor. The supreme court said:

"We do not concur in this view. Without referring to the evidence in detail, we content ourselves in saying that upon the issue as to whether notice was in fact mailed as claimed by the defendant there was evidence both ways. The case upon this point was peculiarly one for the jury."

The supreme court further said:

"Whether the clause in the certificate of insurance relating to the notice means anything more than that proof of mailing a notice, according to the defendant's usual course of business, directed to the insured at his post-office address, as appearing upon its books, made a prima facie case of compliance upon its part with the terms of the contract, leaving the insured to prove, in order to prevent a forfeiture of his membership, that the notice was not in fact received by or for him, we need not determine."

In the present case the statute itself makes proof by the insurance company of the mailing of the required notice prima facie evidence only of the giving of the notice; for the provision is that:

"The affidavit of any officer, clerk, or agent of the company that the notice to the assured provided for in section one has been duly addressed and mailed by the company issuing such policy to the assured shall be presumptive evidence of such notice having been duly given."

Certainly, in view of that statutory provision, the beneficiary of the policy is entitled to give rebutting testimony. That this may consist in part of the fact that the notice was never received by the assured is clear. Jackson v. Association (Wis.) 47 N. W. 733, 735; Hastings v. Insurance Co., 138 N. Y. 473, 476, 34 N. E. 289; Insurance Co. v. Fields (Tex. Civ. App.) 26 S. W. 280, 281; Huntley v. Whittier, 105 Mass. 391, 392.

It is further contended on the part of the plaintiff in error that the court below erred in refusing to give to the jury this instruction:

"The jury are further instructed that, under the provisions of the policy in suit, and particularly the provisions of paragraph 7 of 'Provisions and Requirements,' printed on the back of the policy, and constituting a part thereof, after the insured in said policy had elected not to use, in reduction of his quarterly premium payments falling due during the year next preceding July 14, 1890, two of the quarterly shares of the dividend or surplus distributed to his policy for that year, the defendant company was not obliged or entitled to credit any sum to him on account of said two quarterly shares not used in reduction of the amount of the premium payable on said policy on July 14, 1890, except upon request of the person holding the absolute legal title to the policy, and was not obliged to make any mention, in giving the insured notice of the premium to become payable on July 14, 1890, or in the dividend notice accompanying the same, of the right of the insured to use said two quarterly shares of the next preceding year's dividend in reduction of the amount of that premium, or to make any reference in either of said notices to the above-mentioned provision of the policy in that regard."

The substance of the request thus made was covered by that portion of the charge of the court below in which the jury was told that if they found from the evidence that the notice requiring the assured to pay the premium of $80 on July 14, 1890, was mailed as claimed on the part of the plaintiff in error, then and in that event the plaintiff in the suit could not recover upon the policy "without having proved payment of the quarterly premium of $80, which became due

and payable on said policy by the terms thereof on July 14, 1890, or the payment of said premium less the amount of any dividend which the insured was entitled to apply toward payment of said premium."

Complaint is also made of the refusal of the court below to give to the jury this instruction requested by the plaintiff in error:

"If the jury believe from the evidence that on July 14, 1890, George G. Matthews was the agent of the insured, Thomas L. Nixon, in charge of the policy in suit, and with authority to act for him in respect to it, and was then also the agent of the plaintiff, Cora E. Nixon, with authority to act for her in respect to that policy, and that on said July 14, 1890, the witness Ball, being an agent of the defendant company in charge of the company's receipt for the premium payable on said day upon said policy, and being authorized to collect said premium and thereupon to countersign the [and] deliver said receipt, called on said Matthews for that purpose, and requested payment of said premium; and if the jury believe that thereupon said Matthews declined to pay said premium, and stated that the insurance provided for in said policy would no longer be kept in force,—in such case the jury are instructed that such response of said Matthews to said request for payment of said premium amounted in law to a waiver on the part of both the insured and the plaintiff of the previous notice in respect to said premium required by the statute of the state of New York, and in such case the plaintiff is not entitled to recover upon the policy in suit without having proved payment of said premium which became due, according to the terms of the policy, on June (July) 14, 1890."

There are several reasons why the court below was right in refusing to give this instruction. It will be sufficient to state one, and that is that the statute of New York prescribes the condition upon which a policy may be forfeited for the nonpayment of a premium. The statute is mandatory, and controls the contract. Its provisions are not subject to be set aside or waived either by the company, or the assured, or by both together. Society v. Clements, 140 U. S. 226, 233, 11 Sup. Ct. 822; Hicks v. Insurance Co., 9 C. C. A. 215, 60 Fed. 690; Griffith v. Insurance Co. (Cal.) 36 Pac. 117; Warner v. Association, 100 Mich. 157, 58 N. W. 667. The judgment is affirmed.