SULLIVAN *v.* LADIES CATHOLIC BENEVOLENT ASS'N.

INSURANCE—BENEFICIAL ASSOCIATIONS—SUSPENDED MEMBERS—RE-
INSTATEMENT—CONFLICT IN SUPREME AND LOCAL CONSTITUTIONS.
In view of a provision of the constitution of the supreme council of a beneficial association giving a suspended member three months in which to make payment of arrearage of assessments and dues, in addition to a small fine, without requiring a health certificate, and making it the duty of the president of the local branch, at a regular meeting thereof, to reinstate any suspended member making such payment, a suspended member whose dues and assessments were paid to the secretary of the

local branch within 15 days after they became due, which were retained until the time of the trial, was reinstated and her policy valid, although the local branch had not met and acted on her reinstatement at the time of her death; a provision of the constitution of the local branch limiting the time and place of payment to regular meeting nights of the local branch being immaterial, especially in view of the fact that the provisions of the local constitution were often disregarded, and, if strictly enforced, would be in conflict with the constitution of the supreme council.

Error to Kent; Brown (William B.), J. Submitted October 21, 1921. (Docket No. 107.) Decided December 21, 1921.

Assumpsit by Abbie Wernette Sullivan against the Ladies Catholic Benevolent Association for the amount of a benefit certificate. Judgment for defendant. Plaintiff brings error. Reversed.

*Grant Sims,* for appellant.

*J. T. & T. F. McAllister,* for appellee.

MOORE, J. This is an action brought by the plaintiff against the defendant to recover the sum of $1,000 claimed to be due to the plaintiff under a beneficiary certificate issued by the defendant to her mother, Elizabeth W. Boody. The case was tried before the judge without a jury. The court found the deceased had failed to pay her benefit assessment in accordance with the constitution and by-laws, and died while so suspended, and rendered a judgment in favor of the defendant. The case is brought here by writ of error.

The defendant on April 27, 1915, issued to Elizabeth W. Boody, as a member of St. Mary's branch, located at Grand Rapids, a beneficiary certificate for the sum of $1,000 and the plaintiff, her daughter

Abbie Wernette Sullivan, was the beneficiary. This certificate provided that the certificate, the charter, the articles of incorporation, the constitution and by-laws, the application and medical examination signed by her, should constitute the agreement. That part of the constitution which applies to this case and which became part of the contract is as follows:

"Constitution of the Supreme Council.
"SECTION 15. Every member of this department must pay to the beneficiary fund in her branch the amount of her assessment on or before the last day of each month. Then if said assessment shall not have been paid before, but shall remain unpaid at the time of the first regular branch meeting after the expiration of the month, such members who fail to pay the assessment are by their own neglect hereby declared to be suspended and to have suspended themselves, by their own act from all right in the association, and should they die while under such suspension, they shall not be entitled to the beneficiary. Any member suspended for the nonpayment of assessment, and remaining suspended during the period of three months or less, shall be reinstated by the branch president, at a regular meeting of the branch from which she is suspended, when said suspended member shall have paid all assessments and monthly dues due at the time of her suspension, and from the date of her suspension to the date of her reinstatement, and in addition thereto a fine not exceeding twenty-five cents." * * *

Section 158 of the constitution of the local branch provides:

"SEC. 158. Applications for membership, reports of trustees on the fitness of applicants, balloting and initiations, transfers, suspensions and expulsions and like orders of business shall never be acted upon except at regular meetings."

Section 227 of the constitution of the local branch reads in part:

"Financial secretaries shall receive all money from members on account of their assessments and dues, and pay the same over to their treasurers before the close of each meeting; shall during every meeting read aloud the amounts received and what for, and shall also state the total amount of receipts for each fund separately; shall not receive any beneficiary money from or for any member unless same be tendered at the time and place of the regular branch meeting; shall notify members when they. are in arrears for dues for three months; at every regular meeting, shall report to the branch the names of members who are in arrears for assessments and dues, and liable for suspension."

The facts are not very much in · dispute. The plaintiff testifies in part:

"After I moved to the east side in August, 1916, my mother lived with me. When she was on the west side she lived with Father Alfred. Mother was living with me when she took sick on April 13, 1919. I don't know what was the matter with her. I know now that she died of peritonitis. She was taken to the hospital on the night of April 15th about 9 o'clock. The night before she was taken to the hospital I asked our next door neighbor Mrs. Slawson, to go over to the home of Miss Elger and pay mother's dues and assessment. The reason that I did not go myself was that mother was sick and I did not want to leave her alone. I asked Mrs. Slawson to be sure and make the payment that night. Drs. Kelsey and VandenBerg attended my mother. They thought she might have appendicitis and operated for that, and they did not know · that it was peritonitis until the *post-mortem* examination."

Bertha Slawson testified:

"About 9 p. m. on the night of April 14, 1919, the plaintiff came to my home and said her mother was not feeling well and her insurance ran out that day and she asked Mr. Slawson if he would go over and pay it; he consented and I went with him."

The version of the secretary of what occurred is as follows:

"On the evening of April 14, 1919, at about 10:30 p. m., and after I had retired, some persons called at my home and my sister, Bertha, Elger, received them and they wanted to leave the money to pay the assessment and dues for Mrs. Boody, and my sister called to me and asked me how Mrs. Boody was standing and I told her simply that she was suspended and could not be reinstated. My sister called up and said 'They are bound to leave the money and will I take it?' and I said, 'They can leave the money and we will take it up at the following Tuesday.' * * *

"The assessment for March, 1919, was No. 351 and was due on or before the last day of March, 1919, and not being paid on April 8th, her name was duly entered in the records as being in arrears and she was so reported to the supreme council.

"It is my duty to receive the money from the members on account of assessments and dues and to read aloud at each meeting the total amount received and what it is for and I am not to receive any beneficiary money unless it is tendered at the time and place of the regular meeting."

The secretary was examined at length. Her testimony disclosed that. when the name of the insured was read at a regular meeting, if some member arose and vouched for the delinquent one, the name was taken from the suspended list, though the assessment was not paid, and that this was the custom and had been at nearly every meeting since the local branch had been in existence, and that it had been done in the case of Mrs. Boody. Her testimony also developed the fact that she had received assessment dues at her house, and that this was true of Mrs. Boody.

Mrs. Boody died on April 17, 1919. It will be noted that only one assessment was unpaid and that an attempt had been made within 15 days after it

became due to pay it by leaving it with the secretary, who retained it and that it had not been tendered or returned until at the time of the trial, when an attempt was made to tender its return.

Counsel for the appellee say that under *Edgerly* v. *Ladies of the Modern Maccabees,* 185 Mich. 148; *Sumerlin* v. *American Fraternal Stars,* 202 Mich. 154; and *Koehler* v. *Modern Brotherhood of America,* 160 Mich. 180, the plaintiff cannot recover. Those cases differ from the instant one in the very important particular that the insured could not be reinstated without presenting a health certificate, which certificate could not be furnished at the time the insured sought to be reinstated because of the ill health of the insured. In the instant case no health certificate was required. If the payment of all arrears was made, including a fee of 25 cents, within three months, or less, it became the duty of the president of the local branch to reinstate the suspended member at the next regular meeting of the local branch. Section 15 of the constitution of the supreme council gives three months in which to make the payments. It says nothing about limiting the payments to the one to six evenings when the local branch was in regular session, nor that payments must not be made to the secretary except at the regular branch meetings. It is true that in the provisions affecting the local branch there is an attempt to limit the time and place of the payments, but we have already seen that these provisions were very frequently disregarded. If interpreted literally instead of the insured having three months in which to pay assessments past due, which would entitle them as of course to reinstatement as provided in section 15 of the constitution of the supreme council, they would be entitled to only such time as the evenings when the regular meetings of the local branch would be in session.

In *Davidson* v. *Benefit Society*, 39 Minn. 303 (39 N. W. 803, 1 L. R. A. 482), the syllabus reads:

"Where a policy of insurance is issued by a mutual benefit society, the terms of which are in conflict with a by-law of the society (it having power under its charter to issue such a policy), the society must be deemed to have waived the provisions of the by-law in favor of the assured, and wherein they are inconsistent with the provisions of the policy the latter will control the rights of the parties."

In *Jackson* v. *Mutual Relief Ass'n*, 78 Wis. 463 (47 N. W. 733), the following is stated in the opinion:

"In the very recent case of *Kenyon* v. *Mutual Aid Ass'n*, 122 N. Y. 247 (25 N. E. 299), the certificate required the money for assessments to be paid at the office in cash, sight drafts or money orders. Failure to pay in ten days after notice worked a forfeiture of membership. The member had paid fifteen assessments by mailing his check to the company, without objection. In the last instance he mailed his check in time but it did not reach the office within the ten days. The court held that the jury were warranted in finding that this method had been acquiesced in by the company, and that the certificate was not forfeited. In *Stylow* v. *Insurance Co.*, 69 Wis. 224 (34 N. W. 151), it was held that the company had waived its right to declare a forfeiture for failure to pay the last assessments until after the member's death, by receiving assessments in a great number of instances, after the time limited by the rules of the company, and by continuing to make assessments against the member after repeated defaults. Mr. Justice Taylor says, in the opinion:

"'Every time the company makes an assessment against the assured after he has failed to pay a previous assessment within the time prescribed by the rules, it waives the forfeiture of the policy for such failure to pay, and admits him to be a member of the company notwithstanding such failure.'

"This case is strongly in point. See, also, *Whiting* v. *Insurance Co.*, 76 Wis. 592 (45 N. W. 672); *Erdmann* v. *Insurance Co.*, 44 Wis. 376; *Woodruff* v.

*Town of Depere*, 60 Wis. 128 (18 N. W. 761) ; *Alexander* v. *Insurance Co.*, 67 Wis. 422 (30 N. W. 727), and cases cited in appellant's brief."

In that case, on February 12th, the assured mailed to the company the arrearages and a health certificate. In going to or returning from the post office she caught a cold and died the next day before the package containing the money and papers reached the company. It was held her rights to reinstatement became fixed at the time of mailing the package, and her subsequent death was immaterial.

In *Leonard* v. *Insurance Co.*, 128 Wis. 348 (107 N. W. 646), it was held that when—

"A life insurance policy provided that, in case of lapse for nonpayment of a premium, it would be revived at any time within two years upon written application and payment of arrears, provided evidence of the insurability of the assured, satisfactory to the company, were furnished. *Held*, that an assured applying for such a revival did not stand in the same position as an applicant for a policy in the first instance, but had a contract right to the revival upon the specified conditions."

In *Walker* v. *Order of the Golden Star*, 212 Mass. 289 (98 N. E. 1039, Ann Cas. 1913D, 345), it was held:

"Where a by-law of an incorporated fraternal beneficiary order provides, that a member suspended by reason of nonpayment of an assessment within thirty days from notice of it shall be reinstated on payment of the assessment within the next thirty days, such a payment made in good faith within the last named period, in the absence of any requirement of good health as a condition of reinstatement, will operate to reinstate the member although when it was made he was suffering from an injury which later caused his death."

See *Petherick* v. *Order of the Amaranth*, 114 Mich. 420.

In *Jones* v. *Assurance Co.,* 120 Mich. 211, Justice GRANT, speaking for the court, said:

"The law does not favor forfeitures, in fact, abhors them, and will avoid them whenever any reasonable ground can be found for so doing. *Hartford, etc., Ins. Co.* v. *Unsell,* 144 U. S. 439 (12 Sup. Ct. 671), and authorities there cited. It is undisputed that Mr. Randall informed Mr. Jones within a few days after the time limited for payment, that he would have to furnish a health certificate from the physician of the company, and that he gave Jones such a certificate to be filled out. This he did and the certificate in due form was given to the company, through Mr. Randall. This was a waiver of the failure to pay, and entitled Mr. Jones to reinstatement. * * *

"The learned counsel for the defendant argues that there is nothing in the testimony to indicate that Mr. Jones was informed that his payment would be accepted after maturity if he were in good health. We think it a fair inference from the testimony that it was the understanding between Mr. Jones and Mr. Randall that the only thing required for him to do, in order to be reinstated, was the procurement of this certificate and the payment of his money. It was in accordance with the usage of the defendant. It is not necessary that there be an express waiver; it may be implied from circumstances. *Mobile Life Ins. Co.* v. *Pruett,* 74 Ala. 487, and authorities there cited."

In the instant case the payment was actually in the possession of the secretary of the company within 15 days after it became due, and when only a moiety of the time had expired in which the assured was entitled to reinstatement as of course. No certificate of health was required. It would sometimes happen that there would remain several days of the three months period after the last regular meeting in that period. The practical effect would be if the provision of the local council is to control, to shorten the period of time given by the general council in which payment of past due assessments might be made.

This discussion however is largely academic, for the reason that the past due assessment was actually paid and was in the possession of the secretary at the time of each of the regular meetings between the 15th of April and the expiration of the three months period. It is difficult to see what difference it could make to either the local branch or the general council whether the money was brought to the regular meeting of the local branch by the assured, or by one of her fellow members, or by the secretary, so long as it was in the possession of the local branch at a regular meeting within the three months period allowed for reinstatement. The trial judge instead of finding a judgment for the defendant, should have found one for the full amount of the plaintiff's claim.

The judgment is reversed with costs in favor of the plaintiff, and a new trial ordered.

STEERE, C. J., and WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. FELLOWS, J., did not sit.