REISZ and another, by guardian *ad litem*, Respondents, vs. THE SUPREME COUNCIL AMERICAN LEGION OF HONOR, Appellant.

*May 20 — June 2, 1899.*

*Mutual benefit societies: Failure to pay assessments: Forfeiture: Waiver: Pleading: Evidence: Instructions to jury.*

1. In an action on a benefit certificate it appeared that the by-laws of the association, in accordance with which the certificate required payments to be made, provided that upon failure to pay any assessment on or before the day it was due the member stood suspended, with the privilege of reinstatement within sixty days on payment of the delinquent assessment and others meanwhile made; that the deceased member failed to pay an assessment when due and died ten days thereafter; and that on the day of his death the assessment was paid to defendant's collector, who receipted therefor but attempted to return the money on learning of the death. It also appeared from the evidence of defendant's officers that, during nearly two years before the death, assessments had been frequently received by the association two weeks after the specified pay day and retained, without suggestion of suspension and enforcement of the forfeiture, and that no entry of any suspension was made in the lodge books after default until after the death of the assured. *Held*, that while, on the failure to pay the assessment in exact performance of the strict terms of the agreement, a forfeiture was imposed, the conduct of defendant and its officers was such as to induce the belief of deceased that not a strict but a modified performance of the agreement was satisfactory, and to justify the conclusion that the minds of the parties had met on the new understanding of a modified performance, and hence that at the time of the death no forfeiture had occurred and deceased was therefore in good standing.

2. Admission of evidence showing waiver of prompt payment, though such waiver is not pleaded, is not a material error, especially where the objection to such evidence is general and does not point out the specific objection relied on for reversal.

3. Under sec. 2853, R. S. 1878, requests for instructions to the jury are to be granted or refused *in toto* as presented, and are properly refused if incorrect.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

Plaintiffs are beneficiaries named in benefit certificate No. 156,052, issued by the defendant to their father, Christian Reisz, June 10, 1891, being, however, a continuation of said Christian's membership, which commenced in 1882. This certificate required payment of assessments according to the by-laws, and they provided for payment of regular assessments on the 1st and 15th of each month, and such special assessments as might be called; and further provided that upon failure to pay any assessment on or before the day it was due the member should stand suspended, with privilege, however, of reinstatement by payment, at any time within sixty days, of the delinquent assessment, together with all other assessments which had been called before the date of suspension. Christian Reisz failed to make payment of an assessment of $2.64, which was due July 1, 1893. He died July 10, 1893, and the same day his daughter paid this assessment to the defendant's collector, who received and receipted for it without knowledge of the death, but immediately on receiving such information returned it to the daughter, who refused to receive it.

The jury found that the defendant, by its course of dealing, had led the deceased to believe that payment of assessments within a few days after the time fixed therefor would be accepted with the same effect as though such assessments were paid on time, and would leave the deceased with the same rights and benefits, and that defendant had waived a strict compliance with the requirement of prompt payment

of assessments.; also that the deceased was led by such course of dealing to defer the payment due July 1, 1893, until his death, on July 10th. Judgment was rendered for the plaintiffs for the amount of the certificate and interest, from which defendant appeals.-

*A. B. May,* for the appellant, contended, *inter alia,* that the by-laws providing that the nonpaying member should stand suspended from the order, and all rights and benefits therein, and his certificate should be void, were self-operating, without any act of the association or its officers. *Freckmann v. Supreme Council,* 96 Wis. 133; *Schmidt v. Supreme Tent,* 97 Wis. 528; Niblack, Ben. Soc. & Acc. Ins. § 289; Bacon, Ben. Soc. § 385; *Carlson v. Supreme Council,* 115 Cal. 466; *Rood v. Railway P. & F. C. M. B. Asso.* 31 Fed. Rep. 62. A member neglecting to become reinstated during his lifetime cannot be reinstated after death although the period within which he could, if living, has not expired. *Carlson v. Supreme Council,* 115 Cal. 466; *Modern Woodmen v. Jameson,* 49 Kan. 677; *Borgraefe v. Knights of Honor,* 22 Mo. App. 127; *Madeira v. Merchants' E. M. B. Soc.* 16 Fed. Rep. 749.

For the respondents there was a brief by *John F. Burke,* and oral argument by *G. D. Price.*

Dodge, J. 1. The primary and vital question in this case is whether the fact that at the time of his decease Reisz had defaulted payment of an assessment due ten days before according to the strict words of his contract had unavoidably forfeited his rights.

It is urged that no such forfeiture occurred because the defendant had by a long course of dealing led the deceased to believe and understand that the provisions of the contract regarding failure of payment on the exact day specified would not be insisted on as suspending him from his membership. The findings of the jury on this subject have support in the evidence. It appears by the entries in decedent's

receipt book that through the years 1892 and 1893 his payments were received frequently as late as two weeks after the specified pay day, and the secretary testifies that he was not suspended during those years. The collector testifies to receiving single assessments after due, although others had also been called, without question of decedent's good standing, and that he was ready to receive the one assessment on July 10th, although two others, due, respectively, July 15th and July 20th, had been called before July 1st, and made no suggestion of insufficiency thereof until informed of Reisz's death. In the interval between July 1st and July 10th no entry of suspension had been made on the lodge records, but immediately on learning of the death an attempt was made to enter a record as of an earlier date, thus indicating the officers' understanding that their conduct up to that time had not been consistent with a theory of suspension meanwhile. It is, of course, true that under the by-laws decedent had a right at any time within sixty days after a default, if suspended, to reinstate himself by paying the defaulted assessment and such others as, though not due, had been called before default, and a mere payment and acceptance of money in accordance with that right would convey no necessary implication otherwise; but acceptance of overdue assessments without insisting, or even suggesting, that other acts were necessary for reinstatement, at least suggests an understanding that the transaction constituted a satisfaction of the original promise to pay, and that default did not exist. Such payment would otherwise be utterly futile, and it is unreasonable to suppose a member would make it. Defendant would be guilty of bad faith in receiving it if it intended to insist on its futility. In the light of the above-mentioned evidence from defendant's officers, and the testimony of plaintiffs that throughout a long period such payments had been made and received from a few days to a month late, with no suggestion that anything more was necessary to set

Reisz and another vs. The Supreme Council American Legion of Honor

decedent right and protect his interests, the question of the intent and understanding of the parties was open to the jury, and they were justified in holding that such payments were made and received on the understanding that decedent thereby kept his standing, and not that it was necessary to regain it. From that he might reasonably infer that he was in the future to be accorded a reasonable credit upon his assessments before there should be deemed to be a default causing his suspension, and that the strict letter of his contract had been modified or waived to that extent.

The fundamental general rule of the law, of course, is that the contract actually existing between the parties, the performance of the respective obligations to which they have agreed, shall be enforced; but a contract once made may be modified, and provisions favorable to a party thereto may be relaxed or eliminated. *Bannister v. Patty's Ex'rs*, 35 Wis. 215, 225; *Insurance Co. v. Norton*, 96 U. S. 234. Whether the minds of the parties have met on such modification or relaxation then becomes the question for decision, and that question may be resolved as well from acts and conduct as from express words. When the exact performance of a condition is not of importance to the obligee, and results in serious injury or in forfeiture to the obligor, courts lean to such construction of words or acts as relaxes its stringency as being more likely to accomplish the true purpose and understanding of the parties, as well as to promote justice. *Erdmann v. Mut. Ins. Co.* 44 Wis. 376, 382.

In line with such general policy, the rule has become well established by authority that where, by failure of some exact performance, a forfeiture is imposed on one party by the strict terms of an agreement, conduct of the other sufficient to induce a belief that such strict performance is not insisted on, but that a modified performance is satisfactory and will be accepted as equivalent, will justify a conclusion that the parties have assented to a modification of the original terms,

and that their minds have met upon the new understanding that a different mode of performance shall have the same effect — or, as it is often expressed, that the obligee has waived strict performance. *Bannister v. Patty's Ex'rs, supra; Alexander v. Continental Ins. Co.* 67 Wis. 422, 428; *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 228; *Whiting v. Mississippi V. M. M. Ins. Co.* 76 Wis. 592; *True v. Bankers' L. Asso.* 78 Wis. 287; *Jackson v. N. W. M. R. Asso.* 78 Wis. 472; *Laycock v. Parker, ante,* p. 161; *Hartford L. A. Ins. Co. v. Unsell,* 144 U. S. 439, 449; *Insurance Co. v. Eggleston,* 96 U. S. 572; *Mayer v. Mut. L. Ins. Co.* 38 Iowa, 308; *Beatty v. Mut. R. F. L. Asso.* 75 Fed. Rep. 65; *Mueller v. Grand Grove U. A. O. D.* 69 Minn. 236; *Thropp v. Field,* 26 N. J. Eq. 82; *Dilleber v. Knickerbocker L. Ins. Co.* 76 N. Y. 567, 572; 2 Bacon, Ben. Soc. § 433; 2 Beach, Ins. § 769; 2 Joyce, Ins. §§ 1356, 1361.

This rule is equally applicable to all contracts, although it is perhaps most frequently called into operation in case of insurance contracts, wherein are usually contained the most drastic provisions for forfeiture of all rights of the assured upon the slightest deviation from exact performance of various conditions, of some of which at least momentary and strict performance is often of but slight importance to the insurer. In *Hartford L. A. Ins. Co. v. Unsell,* 144 U. S. 448, the following language of the trial court is approved by the supreme court: " The plaintiff comes and says, ' Conceding that this contract reads in this way, the company, by its conduct, waived the necessity of a strict compliance.' She does not say the company so said to her, or to her husband, ' We do not insist upon this; we waive this;' but she says that the company so acted — so conducted itself in its dealings with her husband — that he, as a prudent, reasonable man, did believe, and had the right to believe, that payment on the very day specified would not be insisted upon. Of course, we speak by our actions, just as much as we do by

Reisz and another vs. The Supreme Council American Legion of Honor.

our words; and although there may be no spoken word, no written word, declaring a waiver, yet it may be that a man by his conduct, his course of dealing, justly and fairly leads the other party to believe that he does not care about a strict compliance. . . . If the company, by its conduct, led him, as a reasonable and prudent business man, to believe that he could make payments a few days after, sick or well, it cannot turn around now and say, 'You did not pay at the time.' I cannot say to you, as a matter of law, that one receipt, after the time specified, would make a waiver, or that fifty would. It is not in the numbers. The question is for you to consider and determine from all of them, and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later."

In *Insurance Co. v. Eggleston*, 96 U. S. 572, Mr. Justice BRADLEY, speaking for the court, said: "We have recently, in the case of *Insurance Co. v. Norton, supra*, shown that forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 228, the court directed a verdict for the plaintiff upon evidence of a custom to receive payment after the day specified, and this court, speaking by TAYLOR, J., said: "The assured had every reason to believe that the company would accept the payment of these assessments as it had accepted the payment

Reisz and another vs. The Supreme Council American Legion of Honor.

of all others within a reasonable time after they became due, without making any question as to his state of health. And it is equally plain that, had payment been tendered the day before the death of the insured, such payment would have been accepted. The forfeiture, if any, arose upon the non-payment on or before the day fixed for payment, and it is clear from the evidence that the company did not consider it forfeited on that day."

The facts found by the special verdict bring the case within the rule above stated, and justify the conclusion that at the time of decedent's death no forfeiture had occurred, and that he was in good standing, and the plaintiffs entitled to recover the insurance.

Inasmuch as our conclusion upon the above question is effective against the forfeiture of decedent's membership, it is needless to consider the effect of the fact that on June 30, 1893, he became entitled to a dividend in excess of the amount of the July 1st assessment, or the propriety of admission of evidence to prove it, or the propriety of submitting a question thereon in the special verdict. All such considerations become unnecessary, and any error therein harmless.

2. Admission of evidence to prove the modification of the contract or waiver of prompt payment is now assigned as error for the reason that no waiver is alleged in the complaint. This court has more than once held such an objection untenable, as a general proposition. *Zielke v. London Ass. Corp.* 64 Wis. 444; *Foster v. Fidelity & C. Co.* 99 Wis. 453. Especially, however, is the admission of such evidence not reversible error where, as in this case, the objection is general, not pointing out the specific ground now urged. In such case a judgment will not be reversed for the admission of evidence if, upon any theory of the case, the evidence could be admissible; nor when, as here, the obstacle to its admission could, without prejudice to the defendant, and doubtless would, have been promptly removed by an amend-

ment of the complaint. The evidence having been admitted under only a general objection, and being admissible if the complaint had been amended so as to set out the modification of the printed by-laws (if, indeed, amendment were necessary under this complaint), and there being no suggestion of surprise or special prejudice to defendant, we can now either order the amendment made or can treat the matter as if that had been done. Secs. 2669, 2670, 2829, Stats. 1898; *Phillips v. Carver*, 99 Wis. 561, 578; *Bowman v. Van Kuren*, 29 Wis. 209; *State ex rel. Swenson v. Norton*, 46 Wis. 337; *Walsh v. Colclough*, 56 Fed. Rep. 780, 782.

3. Defendant requested, and the court refused, three instructions, the purport of which was that if, upon the making of past-due payments, deceased was reinstated, then the questions as to leading him to believe in relaxation of the by-laws, and as to waiver thereof, must be answered in the negative.

The instructions requested were none of them correct. The conduct of defendant upon receipt of these payments was only an element in reaching a conclusion as to the understanding of the insured or as to the waiver; it could not be conclusive. The defendant may have duly entered on its records reinstatement, and deceased had no knowledge thereof. The jury were instructed to consider the whole conduct of the defendant, and, if any particular part of its conduct was desired pressed on the jury for consideration, it should have been so requested. The requests made went entirely too far, and under the requirement of sec. 2853, R. S. 1878, that they be granted or refused *in toto* as presented, were properly refused.

The other assignments of error present nothing prejudicial to the appellant, nor anything which, in the light of the rules of law already announced, demands further discussion in this opinion.

*By the Court.*— Judgment affirmed.