KNOEBEL, Respondent, vs. NORTH AMERICAN ACCIDENT INSURANCE COMPANY, Appellant.

*April 3—April 17, 1908.*

*Insurance: Forfeiture: Estoppel.*

1. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.

2. An accident insurance policy provided that the premium should be paid on the 1st day of each month without notice, and that the policy should continue in force only so long as the premiums were paid monthly in advance, and if not so paid that there should be no liability for an accident happening after default in payment and before the premium was actually paid and accepted by the company. The premium could be paid only in Chicago to a designated collector and in case he could not be found to another designated collector, and must always be ac-

companied by a pass-book or card furnished to the assured by
the company on which payments were receipted. The pass-
book stated specifically the conditions of the policy as to time
of payment and the consequence of default. For ten consecu-
tive months the company sent, near the close of each month,
a notice to assured that the premium would be due on the 1st
day of the following month, and inclosed a stamped and self-
addressed envelope with directions to use the same in sending
the premium and the book. Assured was accustomed to await
the notice and always used the envelope in making his remit-
tances. No notice was received during the eleventh month or
thereafter, although assured was ready and waiting to send in
his premium and continued so until the 5th of the following
month, when he met with an accident resulting in his death.
*Held*, that the company was estopped to claim a forfeiture for
nonpayment of premium.

APPEAL from a judgment of the county court of Waukesha
county: M. S. GRISWOLD, Judge.  *Affirmed.*

This is an action by the beneficiary in an accident insur-
ance policy issued by the defendant October 26, 1905, to re-
cover the death indemnity provided thereby. The plaintiff
is the widow of Frank Knoebel, the assured, who was at the
time of the issuance of the policy superintendent of a stone
quarry near Waukesha, Wisconsin, and met with an accident
resulting in his death within a few hours on October 5, 1906.
The policy was issued upon a written application and pro-
vided for the payment of a premium of $1 on the 1st day of
each month, and that the insurance should only continue in
force so long as the monthly premiums were paid in advance
on the 1st day of each month without notice. It further pro-
vided that in case of payment of a renewal premium after
expiration there could be no recovery for accidental injury
happening between the date of the expiration and 12 o'clock
noon of the day following such payment, and that the accept-
ance of any renewal premium should be optional with the
company. The defense pleaded was that Knoebel did not
pay the monthly premium falling due October 1, 1906, and

that the policy had thereby lapsed and expired prior to and at the time of Knoebel's injury and death. The action was tried before a jury and the facts were essentially undisputed. Knoebel paid an advance policy fee of $5 on October 25, 1905, at the time of making his application. The first monthly payment was due December 1, 1905. The policy provided that the monthly payments should be made to the company at its home office in Chicago or to the person designated in writing by the company to receive them. The company gave the assured a small book or folded card containing a notice that, in order to keep the policy in force, all premiums must be paid in advance, without notice, to Geo. L. Forrest, collector, 88 La Salle street, Chicago, or, if he could not be reached, to A. E. Forrest, secretary, 217 La Salle street, Chicago, and that "this book must always be presented to the collector when paying premiums and receive his signature, which is a receipt for the same; if the collector cannot be found, send postoffice or express order or check with this book to A. E. Forrest, Secy., 217 La Salle St., Chicago." The book or card contained an appropriate space with blank lines in which the collector was to note the date and amount of each monthly payment.

At or about the close of each month, beginning with the close of November, 1905, and continuing until the close of August, 1906, the company caused to be mailed at Chicago from the collector's office, 88 La Salle street, a notice directed to the insured at Waukesha, stating that "the payment of your insurance is due the 1st day of the month. Please use the inclosed stamped envelope in sending the same and put your receipt book with your money. The book will be returned promptly." The inclosed stamped envelope was addressed to the collector's office, 88 La Salle street. In response to this notice the assured each month at once mailed the monthly payment of $1 inclosed with the book in the stamped and addressed envelope, and the book was regularly

returned duly receipted. The book was offered in evidence and shows the payments to have been received as follows: December 1, 1905; January 2, February 1, March 1, April 2, April 30, May 31, July 3, July 31, and September 1, 1906. The remittances were uniformly mailed by Lena Knoebel, the daughter of the assured, who went to the post-office a day or two before the close of each month with the necessary dollar and received the notice, and immediately mailed the premium and the book in the stamped envelope. No notice was sent for the October premium. Lena went to the postoffice as usual with the premium money as directed by her father about October 1st, but found no notice. She went two or three times from the 1st to the 4th of October prepared to send the money, but still received no notice. She and her father relied on receiving the notice and did not send the dollar on account of not receiving it. The injury and death of the assured occurred October 5th, and on October 8th the company was notified of the assured's accidental death, but on October 10th denied all liability on account of failure to pay the October premium. The beneficiary tendered the premium by mail to the company October 20th, but it was returned with a denial of all liability. On these facts the trial court directed a verdict for the plaintiff for the amount of the death indemnity with interest and costs, and the defendant appeals.

For the appellant there was a brief by *Frame & Blackstone,* and oral argument by *H. J. Frame.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* and oral argument by *E. Merton.*

WINSLOW, C. J. The conditions of the policy in question were very specific to the effect that the monthly payment must be made on the 1st day of the month without notice, and, if not so made, then that there should be no liability for an accident happening after the default took place and be-

fore the premium was actually paid and accepted by the company. Unless there has been some material change made in these provisions by a subsequent agreement, or unless the company has in some way estopped itself from insisting upon them, there can be no recovery. It is not claimed that the parties made any formal change in their contract relations, but it is claimed that the company, by its uniform practice for ten consecutive months of sending a notice of the maturity of the monthly premium with a request that it be sent in a self-addressed envelope, induced the assured to rely on the continuance of the custom and to believe that the company desired that premiums be forwarded in response to the notice, and hence that the company could not suddenly and without warning discontinue the practice and insist on a default occurring while the assured was in good faith waiting for the usual notice. It is claimed that there are present here all the elements of an estoppel resulting from reliance upon the continuance of an established course of action. The trial court so held as matter of law, and the question presented is whether this ruling is correct.

The general question has been frequently before the courts and the decisions cannot be said to be entirely harmonious. The following proposition taken from the opinion in the case of *Ins. Co. v. Eggleston,* 96 U. S. 572, is believed to be an accurate and comprehensive expression of the fundamental principle involved:

"Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

The difficulty, if any there be, lies manifestly in attempting to apply the general principle to a particular case. That

the assurance company had established a course of action by voluntarily sending the monthly notices for ten consecutive months cannot be doubted, and that this custom was relied on by the assured, and that he delayed sending his premium on account of his daily expectation that the notice with its accompanying stamped and addressed envelope would be received according to the custom, is made certain by the evidence. There can be no difference of opinion upon these questions. The method of payment was hedged about with rather unusual conditions. It could not be made at Waukesha, but must be sent by mail to Chicago. The small book or card furnished to the assured provided that the payment "must be made only" to the collector, Forrest, at 88 La Salle street, Chicago; but it further provided that the book itself "must always" be presented with the payment and receive the collector's signature, and it contained a provision that if the collector could not be found the assured must send the payment "with the book" to the secretary, Forrest, at 217 La Salle street, Chicago. So the assured was informed that he must at all hazards preserve the book, although the book must be sent monthly to Chicago to the collector, and there was a further intimation that the collector might not be always found. These directions, coupled with the repeated declaration that the presence of the book at the time of payment was an essential to effective payment, were certainly well calculated to induce a man unaccustomed to financial transactions to believe that considerable care must be exercised in committing his money and his book to the mails. If by reason of removal of the collector's office, or by reason of misdirection or for any other cause, the book went astray, there was apparently danger that the company would not receive his premium afterwards on account of the absence of the book. In this situation the practice of the company in sending a notice with a request to send the premium in the addressed and stamped envelope inclosed was undoubtedly

peculiarly acceptable. It doubtless appealed to him at once as the only perfectly safe way to insure the safety of his remittances; and when the practice was continued regularly from month to month, the premium in one instance being accepted on the 3d of the month without demur, the conclusion on his part would seem entirely justifiable, if not almost irresistible, that the company also appreciated the possibility of error or mistake and desired that the assured should uniformly make his remittance and send his book in a properly addressed envelope furnished by it, and not attempt to send them forward himself without certain knowledge that the collector's postoffice address remained unchanged. A course better calculated to convince the assured that the company preferred that he wait for the notice could hardly be imagined.

This court has not yet met the exact question here presented, although the general principle that the insurance company may by a course of conduct waive exact performance of the conditions of the policy, or, to express it more exactly, be estopped from insisting on a forfeiture, has been frequently asserted. *Reisz v. Supreme Council A. L. H.* 103 Wis. 427, 79 N. W. 430, and cases cited. In 2 Joyce, Ins. § 1332, the following principle is stated which we regard as a substantially correct statement of the law:

"If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the insured to believe that a clause for forfeiture for nonpayment will not be insisted on, but that the notice will precede the insistence on the forfeiture, and the insured is in consequence put off his guard, such notice must be given, and if not given no advantage can be taken of any default in payment which it has thus encouraged, for the insured is entitled to expect the customary notification, and to mislead the insured by not giving such notice, and then insist upon a

strict compliance with the conditions of the forfeiture, constitutes, under such circumstances, a fraud upon the insured which the courts have refused in numerous cases to countenance." See, also, 2 May, Ins. (4th ed.) § 356 A.

All the elements necessary to constitute estoppel by a long-continued course of conduct under the principles just stated seem to be shown by the evidence here, and they seem to us also to be shown beyond dispute. If there were any conflicting evidence as to the facts or any room for different inferences of fact from the circumstances proven, the question would be one for the jury and not for the court; but in our opinion there is no such room. The continued and uniform custom, its persuasive character, the reliance of the assured thereon, its sudden cessation without notice, and the default by reason of reliance upon the continuance of the custom are all proven without dispute, and there are no circumstances in evidence even throwing doubt upon these essential facts, or justifying any inference to the contrary.

There are no other contentions raised which merit discussion.

*By the Court.*—Judgment affirmed.