SEIDEL, Administrator, Respondent, vs. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

*January 27—February 16, 1909.*

*Contracts: Failure in strict performance: Waiver of forfeiture: Life insurance: Acceptance of premiums after default.*

1. Where, by a failure of some exact performance, a forfeiture is imposed on one party by the strict terms of an agreement, conduct of the other party sufficient to induce a belief that a modified performance is satisfactory and will be accepted as equivalent to strict performance will justify a conclusion that the

parties have assented to a modification of the original terms or that the obligee has waived strict performance.

2. Although by its terms a life insurance contract lapsed upon default in payment of any quarterly premium or instalment, yet the conduct of the insurance company during a period of more than two years prior to the death of the insured, in collecting and receiving after they were due all of such instalments except one (which was paid on the last day of grace) without anything in the course of dealing to suggest that the contract had been terminated and that there had been a reinstatement after a lapse in the manner specified in the contract, is *held* to have constituted a waiver of strict performance, notwithstanding the company in its correspondence and written notices insisted that no stipulation had been waived or modified; and the company is estopped from insisting on a forfeiture and is liable on the contract, although an instalment due three days before the death of the insured was not tendered until after and on the day of such death and was then refused.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

George W. Goes, on November 18, 1901, applied to the defendant for a twenty-year five per cent. registered gold bond for $10,000, in accordance with the terms of the defendant's "contract of sale." The contract provided for the payment to the defendant of an annual instalment of $794.60 on November 27th of each year, and was protected by a life assurance for an amount equivalent to the bond applied for on the endowment plan with an accumulation period of twenty years.

The conditions of the contract essential to the purposes of this case are as follows:

"III. *Grace in the payment of instalments.* Should default be made at any time hereafter in the payment of any instalment due under this contract as herein provided, the society will waive such default and accept the payment of said instalment provided the amount thereof with interest thereon at five per cent. per annum from date of default be tendered to it within thirty days after such default.

"IV. *Reinstatement.* Should this contract lapse by reason

of the nonpayment of any instalment when due, it may be reinstated at any time upon the purchaser furnishing evidence of good health satisfactory to the society and the payment of all arrears and any indebtedness to the society existing under this contract at the date of lapse, with interest thereon at five per cent. per annum.

"The holder of this contract is protected by life assurance hereunder as follows:

"(1) In the event of the death of the purchaser within twenty years from the register date of this contract (provided all previous instalments have been duly paid and this contract is in force), any annual instalments falling due after said death will be canceled and this contract will thereupon mature; and upon the receipt of satisfactory proof of said death, the society will immediately deliver the gold bond provided for herein, or in lieu thereof will pay the equivalent value of said bond in cash, namely, thirteen thousand dollars, to the purchaser's executors, administrators or assigns."

"(8) The entire agreement between the society and the purchaser is embodied in this contract of sale and the subscription (or application) therefor, taken together, which cannot be varied except in writing by one of the following executive officers of the society at its home office in New York, namely, the president, one of the vice-presidents, the secretary, the assistant secretary, the comptroller, the actuary, the assistant actuary, the treasurer, the auditor, the recorder, the registrar or the assistant registrar."

On November 26, 1902, a change was made in the contract, whereby the premiums, instead of being payable annually, were made payable quarterly in the sum of $210.60 on the 27th days of November, February, May, and August. The receipts of the society for instalments were sent from the headquarters of the society to the agents of the society prior to the date when due. Notices were sent at the same time to the insured, giving the amount of the instalment or premium, the date when due, and the person to whom payment could be made. In the event of an omission to pay when due, the agent authorized to receive payment sent a

notice of the nonpayment to the insured and urged a reinstatement by payment. At times a collector would take out the receipts for overdue instalments, and, upon seeing the insured, assuring himself by inspection or questioning that the insured was in good health, and upon receiving the payment would turn over the receipt. If the collector was not trusted, or if he was doubtful of the risk, he made report to the officer authorized to receive payment, and such further steps were then taken as this officer deemed necessary to assure him of the health of the insured. The receipt was then sent to the insured by the officer authorized to receive the payment. It does not appear how long the department agent might retain the receipts after the instalment became due and remained unpaid before he was expected to return them to the home office.

In the instant case the dates when the instalments were due, the dates of the expiration of the thirty days of grace, and the dates of payment, as taken from the books of the agency of the society, were as follows:

| Quarterly payments. | Due. | 30 days of grace expired. | Paid. |
| --- | --- | --- | --- |
| 1st. | Nov. 27, 1902. | Dec. 27, 1902. | Jan. 13, 1903. |
| 2d. | Feb. 27, 1903. | Mar. 29, 1903. | Mar. 30, 1903. |
| 3d. | May 27, 1903. | June 28, 1903. | June 30, 1903. |
| | | (June 26, 1903.) | |
| 4th. | Aug. 27, 1903. | Sept. 27, 1903. | Oct. 1, 1903. |
| | | (Sept. 26, 1903.) | |
| 5th. | Nov. 27, 1903. | Dec. 27, 1903. | Dec. 31, 1903. |
| 6th. | Feb. 27, 1904. | Mar. 28, 1904. | Mar. 28, 1904. |
| 7th. | May 27, 1904. | June 26, 1904. | June 28, 1904. |
| 8th. | Aug. 27, 1904. | Sept. 26, 1904. | Sept. 30, 1904. |
| 9th. | Nov. 27, 1904. | Dec. 27, 1904. | Jan. 3, 1905. |
| 10th. | Feb. 27, 1905. | Mar. 29, 1905. | Mar. 30, 1905. |
| 11th. | May 27, 1905. | June 26, 1905. | |

The amounts which were paid on March 30, 1903, and on October 1, 1903, were received by mail, according to the books of the Milwaukee agency. There is no record of any statement that his health was good at the time of payment of an overdue instalment subscribed by the insured. With the exception of the instalments which were paid by mail

and the last one or two instalments, they were collected from the insured by a collector of the society now deceased. The collector of the last one or two payments took the receipts with him, called upon the insured, and upon receiving a check for the amount of the instalment handed the receipt to the insured. He testifies that he observed him, but asked him no questions as to his health. The general agent of the society, to whom the receipts were sent and to whom the insured were notified by the society that they might make payments, testified that he acted in the matter of a reinstatement upon the verbal report of the collector to him. No records were produced by the society showing any record of any reinstatement of Mr. Goes upon his formal application and upon his furnishing proof of good health. Nor is there evidence that the necessary formal steps to a reinstatement were insisted upon.

The insured took his own life on the morning of June 29, 1905. At about 12:30 in the afternoon a tender of the instalment due on June 26, 1905, was made on behalf of the deceased's estate. The offer was rejected. Plaintiff, as administrator of the estate of the deceased, brings this action to recover the amount of the insurance. It is averred that the acts of the society through its general agent resulted in a modification of the contract, whereby the part of the contract providing that the contract should lapse upon the nonpayment of an instalment was so modified that a strict performance as to payment of instalments was waived. The defendant claims that the contract lapsed under the conditions of the contract, and that it is liable only for the amount of insurance which became automatically due on the contract by the laws of the state of New York.

At the conclusion of the evidence, which established the facts stated above, the court directed a verdict for the plaintiff for the full amount of the insurance and awarded judgment accordingly. This is an appeal from the judgment.

For the appellant there was a brief by *Winkler, Flanders, Bottum & Fawsett,* and oral argument by *C. F. Fawsett.* To the point that the company is not estopped from insisting upon the terms of the contract they cited, among other cases, *Ewald v. N. W. Mut. L. Ins. Co.* 60 Wis. 431; *Schmidt v. Modern Woodmen,* 84 Wis. 101, 105; *Northern Assur. Co. v. Grand View Bldg. Asso.* 183 U. S. 308; *Modern Woodmen v. Tevis,* 117 Fed. 369; *Conway v. Phœnix Mut. L. Ins. Co.* 140 N. Y. 79; *Thompson v. Ins. Co.* 104 U. S. 252; 2 Bac. Abr. § 431; *Crossman v. Mass. Ben. Asso.* 143 Mass. 435, 436; *Nat. Mut. Ben. Asso. v. Miller,* 85 Ky. 88; *Thompson v. Fidelity Mut. L. Ins. Co.* 116 Tenn. 557, 92 S. W. 1098; *Johnson v. Continental Ins. Co.* (Tenn.) 107 S. W. 688, 692.

*Louis G. Bohmrich,* for the respondent.

SIEBECKER, J. The litigated question is whether or not the acts and conduct of the defendant society, as to payment of the lapsed instalments due from the deceased, Goes, were such as to furnish him a reasonable and sufficient ground to believe that the society would not exact strict performance of the contract respecting the payments of instalments, and that a modified performance of this stipulation would be accepted as a compliance with the terms of the agreement. The defendant alleges a forfeiture of the contract by the failure of the insured to pay the quarterly premium at the time stipulated in the contract. As set forth in the foregoing statement of facts, the insured was in default in payment of all of the quarterly premiums due under the contract from November 27, 1902, to the date of his death, June 29, 1905, excepting the instalment paid March 30, 1904, the last day of grace. Payment was made by the insured and accepted by the society after such default on all of them. The trial court held that this course of dealing of the parties, respecting payment and acceptance of all such premiums after de-

fault under the terms of the contract, showed a waiver of the strict stipulation of the contract respecting forfeiture for default in payment of the premiums and established a modification of such stipulation in accord with this course and custom of dealing, and that the society is now estopped from insisting on forfeiture under the strict terms of the contract. It is a recognized rule of law, under the decisions of this court,

"that where, by failure of some exact performance, a forfeiture is imposed on one party by the strict terms of an agreement, conduct of the other sufficient to induce a belief that such strict performance is not insisted on, but that a modified performance is satisfactory and will be accepted as equivalent, will justify a conclusion that the parties have assented to a modification of the original terms, and that their minds have met upon the new understanding that a different mode of performance shall have the same effect, or, as it is often expressed, that the obligee has waived strict performance." *Reisz v. Supreme Council A. L. of H.* 103 Wis. 427, 79 N. W. 430, and cases there cited; *Knoebel v. North Am. Acc. Ins. Co.* 135 Wis. 424, 115 N. W. 1094.

It is not disputed that the representatives of the society had full knowledge of the fact that the deceased had failed to pay at the time called for by the terms of the policy, and that a forfeiture of it had been incurred if its terms were enforced. Nor is there dispute as to the authority of Whitlock, the agent, to act for the society in collecting the premiums from the deceased and to execute renewals by delivering them to the deceased. The evidence established that the quarterly instalments due respectively on the 27th of February, May, August, and November in each year, with thirty days of grace for paying them with interest, were not, excepting one, paid within this period, but were in fact paid from one to sixteen days thereafter. It does not appear that the insured, after these lapses, took any steps to be reinstated under the fourth condition attached to the contract, provid-

ing that, if the contract should lapse for nonpayment of any instalment, reinstatement of it might be had if the purchaser furnished satisfactory evidence of good health to the defendant and paid all arrears of indebtedness with interest from the time of such lapse.  The facts are undisputed that the society, after default in payment of these instalments according to the strict terms of the contract, accepted payment of them without demanding of the insured that he furnish evidence of his good health.  The unvarying course of conduct, it appears, was to send a representative to the insured, who, if satisfied from observation or otherwise that the insured was in good health, demanded payment of the defaulted instalment and then reported to the person authorized to receive payment and to deliver renewals.  This representative thereupon accepted payment of the defaulted instalment and delivered the renewal to the assured, or, if the renewal had been delivered by the person sent to collect the unpaid instalment, he accepted payment on the report made to him.  There is nothing in this course of dealing suggesting that the contract had been terminated and that there had been a reinstatement after a lapse in the manner specified in the contract.  It indicates an understanding that this transaction constituted compliance with and satisfaction of the terms of the contract for the payment of instalments and that no default existed.  In the light of such conduct and dealing between the company and the deceased throughout the period shown, it is manifest that the insured had the right to believe that strict performance had been waived, and that he made, and the society received, these defaulted payments on the understanding that the contract had not lapsed and that such modified performance would be accepted by the company in lieu of the obligations imposed by its strict terms.

The force of the claim that the defendant in its correspondence and written notices insisted that no stipulation had been waived or modified is fully overcome by its acts and

conduct, which were naturally calculated to lead any reasonably prudent person to infer that it treated the contract as still in force after such defaults, which under its strict terms constituted a forfeiture and nullification of the obligation. We are persuaded that the deceased and the defendant did not treat the contract as terminated before the insured died, and that the defendant is therefore estopped from insisting on a forfeiture on account of the lapse in the payment of the last instalment, three days before the insured's death. Under such circumstances the personal representative is entitled to enforce the contract against the society. *Reisz v. Supreme Council A. L. of H.* 103 Wis. 427, 79 N. W. 430; 3 Cooley, Briefs on Insurance, 2707.

*By the Court.*—Judgment affirmed.

KERWIN, J., took no part.