AMERICAN NATIONAL INS. CO. v. SMITH.

No. 10930—Opinion Filed Jan. 11, 1923.

(Syllabus.)

Insurance — Action on Life Policies — Forfeiture—Waiver—Estoppel.

In an action by the plaintiff upon two insurance policies, where the defendant admitted the execution and delivery of the policies but interposed an affirmative defense that the policies had been canceled for nonpayment of premiums, and it appears from the evidence that for about seven years the defendant company had collected the weekly premiums by sending a collector to the residence of the insured to receive such premiums, and that on March 11, 1918, the father of the insured paid to an authorized collector of the defendant company all premiums in arrears and continued to pay the weekly premiums until April 2, 1918, the date of the death of the insured, held, that the defendant company is estopped from asserting an alleged forfeiture of said policies and cancellation thereof on January 7, 1918, for nonpayment of premiums, and that the judgment of the trial court in favor of the plaintiff be affirmed.

Error from County Court. Oklahoma County: W. R. Taylor, Judge.

Action by Lula Smith against the American National Insurance Company, a corporation, to recover upon two life insurance policies. Judgment for plaintiff. Defendant appeals. Affirmed.

J. I. Howard and A. M. Beets, for plaintiff in error.

Shirk, Danner & Fowler and R. E. Christian, for defendant in error.

KENNAMER, J. Lula Smith, plaintiff, instituted this action in the county court of Oklahoma county against the American National Life Insurance Company, a corporation, defendant, to recover upon two policies of insurance issued by the defendant to Gladys Smith, in which Lula Smith, mother of Gladys Smith, was named as beneficiary. The answer of the defendant admitted the execution of the insurance contracts attached to the plaintiff's petition, but specifically denied any liability thereon, and set up as an affirmative defense that the policies of insurance were canceled on January 7, 1918, for nonpayment of premiums. and that said policies were not in force on April 2, 1918, the date of Gladys Smith's death. Plaintiff filed reply to the answer of the defendant, denying generally the allegations of the answer, and alleged that if the policies were canceled, as alleged by the defendant, the same were canceled without authority and without notice to the plaintiff or the insured, and that after the date of the alleged cancellation the said defendant. without claiming any default under said policies, accepted the premiums paid thereon, and continued to accept the premiums until the date of the death of the insured, and that by reason thereof the defendant was estopped from asserting a cancellation of said policies

The cause was tried on March 31, 1919, and after the introduction of the evidence in support of the issues. as raised by the pleadings, the trial court found in favor of the plaintiff and rendered judgment in her favor in the sum of $302, and interest, as pleaded for in her petition. Motion for new trial was overruled, exceptions allowed, and this appeal is prosecuted to reverse the judgment of the trial court.

The assignments of error present but one decisive question for review. Did the trial court err as a matter of law under the facts as established by the evidence in rendering judgment for the plaintiff on the policies of insurance? It is the contention of the plaintiff in error that the policies of insurance were not in force. but had been canceled on the date of the death of the insured, Gladys Smith. Without setting out the provisions of the policies in detail, we deem it sufficient to state that the policies, in substance, contain the following material provisions: First, that the neglect of an agent to call will not be deemed an excuse for nonpayment of premiums; that all premiums are payable at the company's home office, but may be paid to an accredited representative of the company, and all payments to be recognized by the company must be entered when paid in the premium receipt book belonging with the policy. If for any reason the premium is not called for when due by an accredited representative of the company, it shall be the policy-holder's duty, before said premium shall be four weeks in arrears, to bring said premium to the company's home office. That the terms of the policy cannot be changed or varied except by written agreement signed by the president and secretary, reinstatement of the insured to be made upon payment of back premiums in full and upon passing a satisfactory medical examination, but such an examination may be waived by said company if it so desires.

Counsel for the plaintiff in error contend that, the insurance policies having been canceled for nonpayment of premiums and no reinstatement of the insured having been made as provided in the policy, the trial court erred in rendering judgment in favor of the plaintiff in the action. The evidence on the part of the plaintiff showed that the company had for about seven years collected the premiums from the insured by sending a collector to her residence and collecting the weekly premium of 25c. That prior to March 11, 1918, for some considerable time the collector had failed to come around and collect the premiums due on the policies, as

had been the custom of the company for several years, but that on March 11, 1918, the collector of the company, J. W. Updegraft, came to the home of Gladys Smith and collected $2.25, the back premiums due on the policies, the money being paid by Sam Smith, the father of Gladys Smith, and Updegraft gave to Smith the following receipt:

"American National Insurance Company,

"Incorporated by the State of Texas,

"Home Office, Galveston, Texas.

"March 11, 1918.

"Received from Gladys Smith $2.25, being the arrears on Policy No. 1569928-537139 which the applicant desires the company to revive.

"Under no circumstances will the company be liable under said policy in case of death until the policy has been revived on the books of the company and the money credited in the premium receipt book belonging to said policy.

"J. W. Updegraft, Agent.

"If the company accepts the revival application, amount paid will be credited in the premium receipt book belonging with the policy; otherwise the money will be returned."

Sam Smith, father of Gladys Smith, testified that he continued to pay all premiums due on the policies of Gladys Smith up until the date of her death, April 2, 1918, to Updegraft, collector of the defendant company. It is admitted that Updegraft was an authorized collector of the company. Sam Smith stated positively in his testimony that Updegraft advised him from time to time upon paying the premiums that the policies were all right. There is really no serious dispute but that the company received the premiums on the policies up to the date of the death of the insured, and the evidence, in our judgment, is sufficient to show that the company's acts and conduct. through its authorized collector, were such as to lead Sam Smith, the agent of the insured in paying the premiums, to believe that everything had been done by the insured to keep her policies in force.

The defendant company, having received the weekly premiums from March 11 until April 2, 1918, the date of the death of the insured, and having never offered to return the same until demand was made for the payment of the policies, we are clear, in this situation, that the defendant company must be held to have waived any provisions in the policies authorizing their cancella-

tion, and by such conduct is estopped from insisting upon a forfeiture. The law is well established that all of the provisions of the policies authorizing a cancellation, or forfeiture, are made for the benefit of the insurance company, and that such provisions may be waived, or the conduct of the insurer may be such as to constitute an estoppel against invoking a forfeiture. Pacific Mutual Life Ins. Co. of Cal. v. O'Neill, 36 Okla. 792, 130 Pac. 270.

On the date of the death of the insured in the instant case the defendant company had in its possession the weekly premiums due on the policies from January 7, 1918, the date on which it is claimed the policies were canceled, to April 2, 1918, the date of the death of the insured, and the law will not permit the defendant company to continue the collection of premiums due upon a policy for this length of time and retain the same, and in case of death assert that the policies upon which the premiums have been collected during this time are void contracts for nonpayment of premiums. If the policy is sufficient valid contract to enable the company to collect premiums upon, it would be an unreasonable proposition to hold, where the premiums had been paid and accepted by the company, that the policy was void for nonpayment of premiums. We are clear in the instant case that the long-continued course of conduct of the defendant company in sending its collector each week to collect the premiums and the acceptance and collection of all premiums in arrears constituted such facts as to estop the defendant from asserting cancellation and forfeiture of policies for nonpayment of premiums. National Life Ins. Co. of the United States v. Clayton, 70 Oklahoma, 173 Pac. 356; Carey v. John Hancock Mutual Life Ins. Co., 100 N. Y. Supp. 289; Knoebel v. North American Accident Ins. Co., 135 Wis. 424, 115 N. W. 1094; 2 Joyce on Insurance, 1332; McNicholas v. Prudential Ins. Co. of America (Mass.) 82 N. E. 692.

For the reasons given, the judgment of the trial court is affirmed.

