ESTATE OF LEEDOM: WALLER CARSON & COMPANY, Respondent, vs. LEEDOM, Executrix, Appellant.

*April 28—May 25, 1937.*

For the appellant there were briefs by *Carl F. Geilfuss,* attorney, and *Peter J. Hayes, Walter D. Corrigan, Sr.,* and *A. C. Backus* of counsel, all of Milwaukee, and oral argument by *Mr. Hayes.*

For the respondent there were briefs by *Bitker, Tierney & Puchner* of Milwaukee, attorneys, and *William H. Page* of Madison of counsel, and oral argument by *Irving A. Puchner.*

FRITZ, J. The judgment under review allows a claim filed by Waller Carson & Company (a corporation, hereinafter referred to as the "claimant") for the recovery of the purchase price on an alleged sale on September 11, 1930, by the claimant to James B. Leedom, deceased, of one thousand four hundred shares of common stock of the Wisconsin Investment Company, a Wisconsin corporation. On the first trial the claimant relied primarily upon two instruments dated September 11, 1930, and entitled, respectively, "Wisconsin Investment Co. Subscription Contract," and "Statement." The material portions of those instruments are

quoted in an opinion which was filed, but subsequently withdrawn, on the first appeal herein, and which appears as a footnote in 218 Wis. 536. On that appeal, after first concluding that there was apparently no contract because of a lack of mutuality, we ordered a new trial, upon a motion for a rehearing, on all issues, including particularly "whether Waller Carson & Company ever became legally obligated to Leedom to make delivery of the stock to him, as a purchaser thereof." Upon the conclusion of the second trial, the court stated in its decision that "the main question in this case is whether there was a mutuality and meeting of the minds" of Leedom and the claimant; and that from all the testimony it could come to but the one conclusion, that the estate is liable on the claim.

In appealing from the judgment entered pursuant to that conclusion, the executrix of Leedom's will (hereinafter called the "appellant") contends that the claimant's proof does not meet the theory upon which a new trial was awarded, and that, therefore, the alleged contract remains unilateral and lacks mutuality. Although neither the so-called "Subscription Contract," nor the claimant's "Statement" of September 11, 1930, expressly states who is the vendor, or obligated to deliver the purchased stock, it is apparent, upon taking into consideration, in connection with those instruments, all of the competent evidence received on the second trial, that Leedom, as well as the claimant, intended and fully understood that the latter was the vendor, and obligated to deliver the stock to Leedom. There is sufficient credible evidence to fairly and reasonably establish those facts, but particularly significant in that regard are repeated and consistent statements to that effect in letters and statements of account which were sent to Leedom by the claimant between September 11, 1930, and September 11, 1932 (when it brought suit against the former on the con-

tract), to which he never objected or otherwise replied. Thus, by way of illustration, in the very first statement rendered to Leedom by the claimant on September 11, 1930, there was the notation, "Please make check payable to Waller Carson & Company." In its letter to Leedom on November 3, 1930, the claimant wrote, "Your account with Waller Carson & Co. has been credited with $33.33 covering the dividend on 1,000 shares of Wisconsin Investment Company. . . ." In its letter to Leedom on December 13, 1930, claimant wrote,

| | | |
|---|---|---|
| 9/11/30 | Purchase of 1,400 shares Wisconsin Investment Company Common stock at $10.50................ | $14,700.00 |
| 12/13/30 | Interest from 9/18/30 to date.... | 208.01 |
| | | $14,908.01 |
| 10/31/30 | Dividend .................... | 33.33 |

12/13/30 Balance due Waller Carson & Co. $14,874.68; and again in its letter of March 17, 1931, the claimant wrote, "Our books show that you have purchased from us 1,400 shares of Wisconsin Investment Company common (old) on which payment has been extended from time to time to suit your convenience. The amount due on this account is $14,700 with accrued interest from September 18, 1930."

Those and similar statements, to which Leedom never took exception or even replied, furnish ample basis for inferring acquiescence on his part in the mutual intention and understanding that the claimant was the vendor (*Ripley v. Sage L. & I. Co.* 138 Wis. 304, 308, 119 N. W. 108, 23 L. R. A. (N. S.) 787), under the "Subscription Contract" signed by Leedom on September 11, 1930, and that therefore that contract was not invalid because of lack of mutuality. Appellant's contention that the "Subscription Con-

tract" is not in the usual form of either an original sale of its stock by a corporation, or a sale of corporate stock by an owner or through a broker, is of no consequence inasmuch as under all of the facts and circumstances it does appear that an agreement which was actually entered into is not invalid for want of mutuality.

Appellant contends that the court erred in excluding parol evidence intended by her to establish a contemporaneous oral agreement to the effect that Leedom's purchase under the written contract of September 11, 1930, was dependent upon a condition precedent, under which he was not to pay for the one thousand four hundred shares purchased under that contract until after he realized on the sale by the claimant, at $29 per share, of certain Cities Service Company stock, which he owned; and that the court also erred in excluding testimony of certain witnesses to the effect that several years after negotiating the contract of September 11, 1930, the claimant's former representative made oral statements in their presence, in which he admitted that condition precedent. In substance and character, the excluded evidence was virtually the same as evidence which we concluded was inadmissible for reasons stated in the opinion filed on the former appeal. As the court's rulings on the second trial are in accord with that opinion, they must be sustained in so far as they are again challenged on grounds which were presented on the former appeal, and which were considered insufficient. However, in addition to the former grounds, the appellant, in a reply brief filed after the oral argument herein, contends for the first time that the excluded evidence was also admissible to establish a fiduciary relationship between Leedom and the claimant, in that the latter was acting as an advisor to enable Leedom to improve his security holdings; and that the claimant, by insisting on payment under the contract of September 11, 1930, without having first

sold Leedom's Cities Service Company stock, breached that fiduciary relationship, and therefore cannot recover. It may suffice to note that appellant is not entitled to relief on a ground asserted for the first time at that late stage of the litigation. *Herro v. Heating & Plumbing F. Corp.* 206 Wis. 256, 263, 239 N. W. 413. But, furthermore, it is evident from the record that Leedom's business and legal knowledge and experience were equal to that of the claimant, and its representative, who negotiated the transactions with Leedom; and that the record does not warrant the conclusion that Leedom was depending upon the claimant's advice, or that there was any such fiduciary relationship between them as to render the rule of *caveat emptor* inapplicable.

Appellant contends that the contract of September 11, 1930, is void because it was entered into in violation or disregard of the statutes, in that its form had not been submitted to and approved by the railroad commission as required by sec. 189.17 (6), Stats. 1929; that the names of the agents or brokers, and amounts of their commissions were not stated in the contract as required by sec. 189.20, Stats. 1929; and that the sale was made without the claimant having a written permit from the railroad commission as required by sec. 189.10 (1), Stats. 1929. The claimant denies that there was any such violation of, or failure to duly comply with, any applicable statute, but in addition also contends that, if there had been, the contract would have been merely voidable at Leedom's option, and that he did not elect to avoid it within the time allowed under the statutes. That contention is sound. Contracts, made under circumstances constituting violations or noncompliance in the respects stated in appellant's contentions, are not absolutely void. Instead, they are merely voidable under the provision in sec. 189.22 (1), Stats. 1929, that "every sale of a security in violation of any provision of this chapter, and every sale of

a security in violation of or noncompliance with the terms and conditions of the permit therefor, shall be *voidable* at the election of the purchaser. . . ." *Good v. Starker,* 216 Wis. 253, 257 N. W. 299; *Josslyn v. Dahinden-Schmitz Co.* 208 Wis. 468, 243 N. W. 473; *Waisbren v. Blink,* 207 Wis. 619, 242 N. W. 169. Notice of a purchaser's election to avoid a contract because of such violations or noncompliance is required by sec. 189.22 (3), Stats. 1929, to "be given to the party from whom recovery will be sought *within three months* after the purchaser shall have knowledge that such security was sold without a permit or in violation of or noncompliance with the terms and conditions of the permit." Furthermore, sec. 189.22 (4), Stats. 1929, provides that "no action shall be brought for relief under this section *after three years* from the date of such sale or contract for sale, but the time for commencing such action shall be extended by reason of any fact specified in sections 330.30 to 330.38, and for the time specified therein." Consequently, in view of sec. 189.22 (4), Stats., if Leedom desired to elect to declare the contract voidable because of some such violation or noncompliance, he had to do so and bring an action to be relieved therefrom within three years from the date of the contract, *i. e.,* September 11, 1930. Consequently, he would have had until September 11, 1933, to bring such an action if he had lived until that date. However, because that three-year period of limitation, under sec. 189.22 (4), Stats. 1929, is, by an express reference therein to secs. 330.30 to 330.38, Stats., extended by reason of any fact specified in the latter sections, and the fact that Leedom died on March 3, 1933, there became applicable the provision in sec. 330.34, Stats., that "if a person entitled to bring an action die before the expiration of the time limited for the commencement thereof and the cause of action survive an action may be commenced by his representatives after the expiration of that time and

within one year from his death." In view of that provision, the three-year period within which Leedom would have been obliged, under sec. 189.22 (4), Stats., to bring an action for such relief (and which would have terminated on September 11, 1933) was extended, by reason of his death on March 3, 1933, so that it did not terminate until March 3, 1934. On the other hand, by reason of sec. 330.27, Stats., which reads, "A cause of action upon which an action cannot be maintained, as prescribed in this chapter, cannot be effectually interposed as a defense, counterclaim or set-off," that limitation as to the time within which Leedom, if living, or his executrix, in the event of his death, had to bring an action for relief based on the violations or noncompliance in question, which rendered the contract voidable, was also applicable to the right of Leedom or his executrix to interpose a defense based on such grounds for an action. Consequently, by reason of the statutes quoted above, the right of the appellant to interpose a defense on the ground of the violation or noncompliance in question, upon which an action for relief could have been brought, terminated on March 3, 1934. However, Leedom never elected to avoid the contract under sec. 189.22 (3), Stats. 1929, by giving the claimant any notice to that effect; and even when the claimant brought its action against him on September 11, 1932, his answer, filed on October 18, 1932, was but a general denial. He never interposed any defense based on such violations or noncompliance. Likewise, his executrix did not interpose any such defense in the county court until it was asserted during the trial on May 25, 1934. As that was over two months after March 3, 1934, when the right to interpose such a defense expired, it had become barred.

Appellant contends that the "Subscription Contract" of September 11, 1930, was without legal effect because the subject matter thereof (*i. e.,* one thousand four hundred

shares of common stock of the Wisconsin Investment Company, the Wisconsin corporation) was no longer in existence because that corporation had discontinued its business operations on June 30, 1930, and had changed its corporate name to "Wisconsin Investment & Security Company." For similar reasons, the appellant also contends that no contract was consummated because the claimant's confirmation thereof in its "Statement" of September 11, 1930, was not an unconditional acceptance of the "Subscription Contract," which related to stock in the Wisconsin corporation, while the "Statement" related to stock which Waller Carson testified was stock in a Delaware corporation of the same name. Those contentions cannot be sustained. It is true that in June, 1930, and the several months thereafter, changes were made in the corporate names of the Wisconsin Investment Company, the Wisconsin corporation, and the International Security Management Company, a Delaware corporation, and also in the financial structure of the latter, in order to effect a merger of their assets and business, and continue their operations under the corporate organization of the latter, with its name changed to "Wisconsin Investment Company." However, at all of the times in question, the claimant was a stockholder in both corporations, and Leedom was a stockholder in the Delaware corporation. He, as well as the claimant, knew of those changes, and that in connection therewith it was arranged that stockholders could exchange their stock on the basis of one thousand four hundred shares of common stock of the Wisconsin corporation for one thousand shares of Class A common stock to be issued by the Delaware corporation when certificates were ready for delivery; and that those changes and the resulting merger would not change the actual asset value of the respective holdings of the stockholders of either corporation. They also knew that in September, 1930, the shares of the Wis-

consin corporation were being traded in under the name "Wisconsin Investment Company," although on June 30, 1930, its name was changed and its business operations were taken over and thereafter conducted by the Delaware corporation under its new name. It also appears that on September 11, 1930, five thousand six hundred sixty-five shares of the common stock of the Wisconsin corporation were owned by and held for it in the names of S. J. Gates and Waller Carson, as nominees; and that at all times since September 11, 1930, the claimant owned in excess of five thousand shares of the new Class A common stock issued by the Delaware corporation. In view of those facts, it is obvious that the purchase by Leedom, on September 11, 1930, of one thousand four hundred shares of common stock of the Wisconsin corporation was made with the knowledge and intention of both parties that those shares were to be exchanged for one thousand shares of the new common stock of the Delaware corporation, when its certificates therefor were ready for issuance and delivery. It was under and because of those circumstances, that the claimant in writing to Leedom said the following:

(1) (In its statement of September 11, 1930):

"To purchase of: 1,400 shares Wisconsin Investment Company Common stock @ 10.50, $14,700.00. . . .

"Permanent engraved certificates for Wisconsin Investment Company will be issued in about 30 days. Delivery of a temporary receipt would necessitate another exchange. Unless otherwise requested, delivery will be made when permanent certificates are ready."

(2) (In its letter of November 3, 1930):

"Your account with Waller Carson & Co. has been credited with $33.33 covering the dividend on 1,000 shares of Wisconsin Investment Company Class A Common Stock at the rate of $.03 1/3 per share.

"This is the amount of Class A stock resulting from the exchange of 1,400 shares of the old Wisconsin Investment Company Common stock."

When those statements are considered in the light of the circumstances stated above, it is obvious that they did not occasion any uncertainty as to what was understood by the parties to be the subject matter of their contract, or result in any such variance or inconsistency in respect to that subject matter as to render the claimant's intended acceptance of the "Subscription Contract," which Leedom signed, merely conditional, and therefore ineffectual; and that, likewise, there is no basis for the appellant's contention that that subject matter was no longer in existence. At all events, Leedom's omission to ever request an earlier delivery of certificates, in response to claimant's suggestion in its statement of September 11, 1930, that "Unless otherwise requested, delivery will be made when permanent certificates are ready," or to assert any disapproval of the exchange of the stock, which is mentioned in the letter of November 3, 1930, warrants the conclusion that Leedom never considered the claimant's statements in those respects to be inconsistent with his understanding of their contract; and in view of his failure to seasonably object to performance thereof in the manner suggested, neither he nor his executrix can subsequently set up such alleged defects or changes in performance in order to treat the contract as invalid. *Starke v. Crilley,* 59 Wis. 203, 18 N. W. 6; *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327; *Seidel v. Equitable Life Assur. Soc.* 138 Wis. 66, 119 N. W. 818; Page, Contracts (2d ed.), § 3037 *et seq.;* Williston, Contracts (2d ed.), § 678 *et seq.;* 13 C. J. p. 670 *et seq.*

Appellant's contention that the claimant cannot recover, because it has not shown its ability to perform, cannot be sustained in view of the facts stated above that on September 11, 1930, it owned five thousand six hundred sixty-five

shares of the Wisconsin corporation's common stock, and at all times thereafter owned over five thousand shares of the Class A common stock of the Delaware corporation.

Appellant also contends that the claimant cannot recover because there was no actual tender of the stock described in the "Subscription Contract," or of any stock as a substitute therefor. In *McDonald v. Van Etta,* 201 Wis. 77, 228 N. W. 478, we held that when the delivery of stock and the payment therefor are to be contemporaneous acts under a contract, then delivery thereof is no more of a condition precedent to the obligation to pay than payment is a condition precedent to the obligation to deliver. Likewise, in *Milwaukee S. & R. Co. v. Lindenberger,* 142 Wis. 273, 276, 277, 124 N. W. 272, this court held that a subscriber to stock under a contract, which did not require delivery or tender of the certificate as a condition of payment, was liable although there was neither delivery nor a tender. Facts and circumstances showing "that the company was ready and willing to deliver the proper certificate of stock to the defendant whenever he performed his obligation by payment of the amount due on his stock subscription" were considered sufficient to entitle the corporation to recover the contract price from the subscriber. Leedom's "Subscription Contract" does not specify when the stock certificates are to be delivered; but as to payment that contract provides: "Payment in full on or before September 18, 1930, without interest." Thus, by virtue of that provision, payment is absolutely and unconditionally required to be made by September 18, 1930, without any corresponding requirement as to a prior or even contemporaneous tender or delivery of the stock. Furthermore, on that subject the claimant said in its "Statement" of September 11, 1930, that "it is our understanding that payment is to be made in full on or before September 18, 1930;" that the permanent engraved certificates for the stock would be issued in

about thirty days; and that, "Unless otherwise requested, delivery will be made when the permanent certificates are ready." Leedom never requested delivery to be made "otherwise," and, although he subsequently received thirteen monthly statements for his past-due indebtedness for the full contract price, with interest, he never indicated any disapproval of the account as rendered, because there had been no delivery or tender of the stock. His silence in that respect likewise warrants the inference that he acquiesced in the claimant's asserted right to payment of the contract price prior to any actual tender or delivery of the stock. *Ripley v. Sage L. & I. Co., supra.*

Appellant's contention that the claimant has not laid a sufficient foundation for the recovery of the purchase price as its damages; and that its damages are merely the difference between that price and the market value or the proceeds realized on the resale of the stock cannot be sustained. Until Leedom filed his general denial in the action brought by the claimant against him on September 11, 1932, in which it continued its election to hold him for the contract price, consistently with the statements of account which it had rendered, there was no renunciation by him of his obligation to pay that amount for the stock which the claimant was holding for him. Because there was no such renunciation until after the claimant had held the stock for Leedom over two years, and had brought that action, and because the claimant was not obliged, under the contract herein, to deliver or tender the stock prior to the date on which Leedom was to pay for it, there is applicable the conclusion which was reached in *Smith v. Lingelbach,* 177 Wis. 170, 174, 187 N. W. 1007, that a vendor, upon whom there rests no further duty to make a tender, is entitled to recover the purchase price as long as he continues to hold the stock for the purchaser's benefit, and is ready, able, and willing to deliver certificates

therefor to him. In *Morris F. Fox & Co. v. Lisman,* 208 Wis. 1, 26, 237 N. W. 267, 240 N. W. 809, 242 N. W. 679, we said,—

"The course to pursue in case of rescission of a sale of bonds and refusal to accept return would under ordinary circumstances doubtless be to retain the bonds and tender them into court and recover the amount paid for them with interest."

*By the Court.*—Judgment affirmed.